## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                        No. CR 03-2274 JB

JOHN GOULD and
VIOLET GOULD,

           Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendants' Joint Motion Challenging Composition of Jury Venire, filed February 15, 2007 (Doc. 276)("Motion"). The primary issues are: (i) whether the composition of the jury venire violates Defendants John and Violet Goulds' Sixth Amendment right to a jury chosen from a fair cross-section of the community; and (ii) whether the jury venire's composition violates Mr. and Ms. Gould's right to equal protection under the Fifth Amendment. Because the Court concludes that the United States District Court for the District of New Mexico does not have to select potential jurors from any particular geographical sub-category within the District when establishing a jury for trial, and because the Court finds that Mr. and Ms. Gould have not demonstrated, or even alleged, that any discrimination in the selection of the jury venire was intentional, the Court will deny the motion.

### FACTUAL BACKGROUND

As a preliminary matter, the Court will refer to "District jury divisions," as that term is used in the District Court for the District of New Mexico's Jury Selection Plan, as District "sub-categories," to avoid confusion with congressionally designated "divisions," which exist in some

federal judicial districts.

A modified Jury Selection Plan for the District of New Mexico was filed on January 25, 2005. See Order Adopting Modified Jury Plan at 1, filed January 25, 2005 (Misc. 6175)("2005 Jury Plan"). Under the Plan, all litigants entitled to trial by jury have the "right to grand and petit juries selected at random from a fair cross-section of the community in each jury [sub-category]," and all qualified registered voters have the "opportunity to be considered for service on . . . petit juries . . . ." Id. The District of New Mexico created a jury selection plan dividing the District into three jury sub-categories, because it believed such a plan would result in impartial trials, would avoid unnecessary expense, and would reduce the burdens placed on those person reporting for jury service. See id.

The District created three geographical sub-categories from which to draw petit jurors:

[i] The Albuquerque/Santa Fe [Sub-category] which includes Bernalillo, Cibola, Colfax, Harding, Los Alamos, McKinley, Mora, Quay, Rio Arriba, San Juan, San Miguel, Sandoval, Santa Fe, Soccorro, Taos, Torrance, Union and Valencia Counties; [ii] The Las Cruces [Sub-category] which includes Catron, Dona Ana, Grant, Hidalgo, Luna, Otero and Sierra Counties; and [iii] The Roswell [Sub-category] which includes Chaves, Curry, DeBaca, Eddy, Guadalupe, Lea, Lincoln and Roosevelt Counties.

Id. In each sub-category, eligible persons are selected randomly via computer to form two successive jury wheels, the Master Jury Wheel and the Qualified Jury Wheel. See id. at 2. Persons selected for inclusion in Master Wheels are subject to being chosen for the Qualified Jury Wheels, which contain those persons from the Master Wheels who the Clerk of the Court has not disqualified, exempted, or excused from service. See id. at 2-3. Persons may be summoned from the Qualified Jury Wheels to form petit jury panels in the sub-categories in which their names appear. See id. at 4.

A new Jury Selection Plan for the District was filed on December 12, 2006. See Order Adopting Modified Jury Plan at 1, filed December 12, 2006 (Misc. 6175)("2006 Jury Plan"). Beyond

-2-

altering the names and composition of the geographical sub-categories, the 2006 Jury Plan remains

substantially the same as the 2005 Jury Plan.  The 2006 Jury Plan defines the three petit jury sub-

categories from which Master and Qualified Wheels are to be formed as:

> [i] The Northern [Sub-category] which includes Colfax, Curry, De Baca, Guadalupe, Harding, Los Alamos, Mora, Quay, Rio Arriba, San Miguel, Santa Fe, Taos, Roosevelt, and Union Counties; [ii] The Central [Sub-category] which includes Bernalillo, Cibola, McKinley, Sandoval, San Juan, Soccorro, Torrance, and Valencia Counties; and [iii] The Southern [Sub-category] which includes Catron, Chaves, Dona Ana, Eddy, Grant, Hidalgo, Lea, Luna, Lincoln, Otero, and Sierra Counties.

Id.

## PROCEDURAL BACKGROUND

On August 25, 2004, the grand jury returned the Second Superceding Indictment.  The

Second Superceding Indictment charges Mr. Gould with two counts of Deprivation of Rights Under

Color of Law, in violation of  18 U.S.C. § 242, and two counts of Witness Tampering, in violation

of 18 U.S.C. § 1512(b)(3), stemming from  alleged incidents involving inmates at the Dona Ana

County Detention Center ("DACDC") in Las Cruces, New Mexico and the Cibola County Detention

Center ("CCDC"), in Grants, New Mexico.  See Second Superceding Indictment at 1-4, filed August

25, 2004 (Doc. 91).  The Second Superceding Indictment also charges Ms. Gould with one count of

Witness Tampering, in contravention of 18 U.S.C. § 1512(b)(3), stemming from her alleged conduct

at the CCDC.  See id. at 4-5.

Seasoned Criminal Justice Act ("CJA") counsel represent both Mr. and Ms. Gould.  Indeed,

Ms. Gould's counsel is on the CJA Panel Committee.  Both personally know how the venire has been

drawn in federal court for many years.  Despite the lengthy time this case has taken to get to trial and

despite prior trial settings, at no time did the Mr. and Ms. Gould request that the Court take the

unusual step of drawing jurors District-wide, rather than using the normal juror plan. They also did not request that the case be tried in Las Cruces or Roswell.

On March 8, 2007, after the jurors had been summoned, the Court held a pretrial conference and a hearing on various pretrial motions in this case. See Hearing Transcript at 2:1 (Reporter)(taken March 8, 2007).[1]  During that conference, the Court -- during discussions about voir dire procedures -- asked its Courtroom Deputy Clerk whether the venire had been drawn using the old Albuquerque/Santa Fe sub-category or the new Central sub-category. See id. at 22:23-23:1 (Court). The Courtroom Deputy Clerk informed the Court that the Albuquerque/Santa Fe sub-category had been used, drawing jurors from Gallup to Soccorro to Torrance. See id. at 23:3-13 (Court).  The Court informed the parties that the jury venire for the trial had been selected from the Albuquerque/Santa Fe sub-category of the District of New Mexico. See id. at 23:3-22 (Court). No one raised any issue or questions about the venire.

On March 15, 2007, Mr. and Ms. Gould filed their motion challenging the composition of the jury venire. See Motion at 1.  With their motion, Mr. and Ms. Gould:

> move the Court pursuant to the Fifth Amendment right to due process and the Sixth Amendment right to a jury trial, for an order dismissing the charges against them on grounds that the jury venire is not comprised of a fair cross-section of the community in which the alleged offenses occurred.

Id.  Alternatively, Mr. and Ms. Gould request that the Court draw the jury from the communities in which the events alleged in the Second Superceding Indictment occurred.  Specifically, Mr. and Ms. Gould contend that the Court should select the jury venire from the entire district or in a manner that would ensure that persons from the Las Cruces sub-category of the District, in which the alleged

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

incidents at the DACDC took place and the Mr. and Ms. Gould currently reside, have an opportunity to serve on the jury at trial.  See id. at 2.  Mr. and Ms. Gould do not cite any case law concerning the relationship between jury composition and the Fifth Amendment's right to due process.  See Motion.

## LAW REGARDING JURY COMPOSITION

The Constitution requires the federal courts to try a person in the state and district where the crimes were committed.  The Courts have also read the Sixth Amendment to require that a jury selection process produce a fair cross-section of the community.  The Fifth Amendment precludes the United States from discriminating against a group of potential jurors of which the defendant is a member.

### A.     THE SIXTH AMENDMENT'S CROSS-SECTION REQUIREMENT.

The Constitution mandates that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed."  U.S. Const., Art. III, § 2, cl. 3.  The Sixth Amendment requires that "[i]n all criminal prosecutions the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed."  U.S. Const., amend. VI.  This principle is reflected in rule 18 of the Federal Rules of Criminal Procedure, which provides that "the government must prosecute an offense in a district where the offense was committed."  Fed. R. Crim. P. 18.

In Salinger v. Loisel, 265 U.S. 224 (1924), the Supreme Court of the United States observed that most multi-division federal districts "required that trial be in [the] division [where the offense occurred], unless the accused consented to its being in another."  Id. at 236.  The Supreme Court in Salinger v. Loisel also noted that in multi-division districts, although the grand jury might be impaneled from "the district at large" and charged with "the investigation and presentment of offenses

committed in any part of the district," when indictments were returned, the cases were remitted "for trial and other proceedings to the divisions wherein the offenses were committed, save as the defendant assented to a disposal in another division." Id.  The Supreme Court offered a rationale for this rule: "In our opinion the real purpose of [this requirement] . . . is to require, where a district contains more than one division, that the trial be had in the division where the offense was committed, unless the accused consents to be tried in another." Id. at 237.

The United States Court of Appeals for Tenth Circuit adopted the practice that the Supreme Court described in Salinger v. Loisel as the preferred practice in 1936.  Interpreting 18 U.S.C. § 114, the Tenth Circuit held:

> When the indictments have been returned in the division where the grand jury is in session, the court should remit them for trial in the division where the grand jury is in session, the court should remit them for trial to the respective divisions where the offenses are charged to have been committed except in cases where the defendant consents to a disposal in another division.

Marvel v. Zerbst, 83 F.2d 974, 976 (10th Cir. 1936).

A defendant's right to a jury that reflects a cross-section of the community is a well-established feature of American jurisprudence.  See Taylor v. Louisiana, 419 U.S. 522, 528 (1975). The Supreme Court in Taylor v. Louisiana noted that "the American concept of the jury trial contemplates a jury drawn from a fair cross-section of the community." 419 U.S. at 527.  A criminal defendant's right to a jury drawn from a cross-section is not a mere technicality; on the contrary, "the selection of a petit jury from a representative cross-section of the community is an essential component of the Sixth Amendment right to a jury trial." Id. at 528.

To establish a prima-facie case that a jury selection process does not produce a fair cross-section of the community as the Sixth Amendment requires, a defendant must demonstrate:

> [i] that the group alleged to be excluded is a distinctive group in the community, [ii] that representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community, and [iii] that the underrepresentation is due to systemic exclusion of the group in the jury-selection process.

United States v. Grisham, 63 F.3d 1074, 1078 (11th Cir. 1995)(citing Duren v. Missouri, 439 U.S. 357, 364 (1979)).  Failure to demonstrate any one of the prima-facie elements ends a jury-composition challenge under the Sixth Amendment.  See United States v. Pepe, 747 F.2d 632, 649 (11th Cir. 1984).

With respect to the geographical parameters of the community from which the jury is selected, the Sixth Amendment's "vicinage provision" provides that criminal defendants are entitled to trial "'by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.'"  United States v. Grisham, 63 F.3d at 1079 (quoting U.S. Const., amend. VI).  "[N]either the language of the vicinage provision nor its legislative history suggest that the geographical area from which the jury is summoned must be smaller than the judicial district created by Congress."  United States v. Grisham, 63 F.3d at 1080.  The vicinage provision does not require that any potential jurors reside in the immediate area of the occurrence of the alleged offense.  See id. (citing United States v. James, 528 F.2d 999, 1021 (5th Cir. 1976), cert. denied, 429 U.S. 959 (1976)).  Additionally, the Sixth Amendment does not require that the jury be drawn from an entire district.  See Ruthenberg v. United States, 245 U.S. 480, 482 (1918)("It is contended that plaintiffs in error were not tried by a jury of the state and district in which the crime was committed, in violation of the Sixth Amendment, because the jurors were drawn not from the entire district but only from one division thereof.  The proposition disregards the plain text of the Sixth Amendment, the contemporary construction placed upon it by the Judiciary Act of 1789 . . .,

and the continuous legislative and judicial practice from the beginning."); <u>United States v. Cannady</u>

54 F.3d 544, 547 (9th Cir. 1995)("[T]here is no constitutional right to a jury drawn from an entire

judicial district, rather than from one division of the district . . . . [D]emographic differences between

divisions do not render division-based jury selection invalid."); <u>Zicarelli v. Dietz</u>, 633 F.2d 312, 316-

318 (3d Cir. 1980)(holding that there is no constitutional right to a jury selected from the whole

district despite differences between divisions).

> Rule 18 provides:
>
> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed.  The court must set the place of trial within the district with due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice.

Fed. R. Crim. P. 18.   The 1966 amendments to rule 18 eliminated the requirement that the

prosecution of an alleged offense must take place in the congressionally designated division, if one

exists, in which the alleged offense was committed.   <u>See</u> <u>id.</u> Notes of Advisory Comm. on 1966

Amend.

> The former requirement for venue within the division operated in an irrational fashion. Divisions have been created in only half of the districts, and the differentiation between those districts with and those without divisions often bears no relationship to comparative size or population.  In many districts a single judge is required to sit in several divisions and only brief and infrequent terms may be held in particular divisions.  As a consequence under the original rule there was often undue delay in the disposition of criminal cases . . . .

<u>Id.</u>  The 1979 amendments to rule 18 were intended to eliminate inconsistency between rule 18 and

the Speedy Trial Act of 1974, which was intended to permit the trial of a case at any place within a

judicial district.   <u>See</u> <u>id.</u> Notes of Advisory Comm. on 1979 Amend.

> The change does not offend the . . . vicinage provisions of the Constitution. . . . [T]he Sixth Amendment defines the vicinage as "the State and district wherein the crime

shall have been committed, which the district shall have been previously ascertained by law." The latter provision makes "no reference to a division within a judicial district." United States v. James, 528 F.2d 999 (5th Cir. 1976). "It follows a fortiori that when a district is not separated into divisions, . . . trial at any place within the district is allowable under the Sixth Amendment . . ." United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973). See also Zicarelli v. Gray, . . . .

Id. The 1966 and 1979 amendments to rule 18 are consistent with Congress' elimination of divisional venue in criminal cases. See 28 U.S.C.A. § 1393 (repealed 1988), David D. Siegel, Commentary on 1988 Repeal of § 1393 (discussing Congress' 1988 elimination of divisional venue in civil cases, and stating, "citing the elimination of divisional venue in criminal cases years earlier, that nothing at all seems to have been lost by its erasure, and that the break-up of a district into divisions is not related either to size or population anyway, Congress repealed as well the divisional venue for which § 1393 had provided on the civil side"). The District of New Mexico does not contain Congressionally assigned divisions. See 28 U.S.C. § 111. Cf. 28 U.S.C. § 114.

In United States v. Grisham, the United States Court of Appeals for the Eleventh Circuit addressed whether it was necessary for a jury to be selected from the division of a district in which the defendant allegedly committed the offense at issue. See 63 F.3d at 1078-81. Acknowledging that the Sixth Amendment gives Congress the power to determine the parameters of vicinage area under the Sixth Amendment, the Eleventh Circuit held that Congress' creation of divisions within districts did not require potential jurors to be selected from the division in which the alleged crime took place. See id. The Eleventh Circuit reached that conclusion, reasoning: (i) that Congress did not express such an intention when it created divisions within districts; (ii) that neither the statute that created divisions nor the statute that created the district in which the case was brought dictated a division-based vicinage requirement -- the Jury Selection and Service Act, 28 U.S.C. § 1861, "does not

stipulate which political subdivision within a district the federal courts should select [a jury from], committing that decision to the courts' discretion;" and (iii) that no legislative history supports the contention that Congress intended to require division-based jury selection.  Id.

### B.    THE FIFTH AMENDMENT'S EQUAL-PROTECTION COMPONENT.

While a defendant has no right under the Fifth Amendment to demand that members from certain groups be included in the jury venire, the defendant is entitled to require the United States not deliberately and systematically deny members from certain groups the right to participate as jurors. See United States v. Williams, 264 F.3d 561, 569 (5th Cir. 2001)(citing Alexander v. Louisiana, 405 U.S. 625, 629-30 (1972)).  To establish a violation of the equal-protection component of the Fifth Amendment's Due Process Clause, a defendant must show: "[i] that he or she is a member of a group capable of being singled out for discriminatory treatment, [ii] that members of this group were substantially underrepresented on the venire, and [iii] that the venire was selected under a practice providing an opportunity for discrimination."  Cunningham v. Zant, 928 F.2d 1006 1013 (11th Cir. 1991).  "To establish a prima facie equal-protection violation a defendant must demonstrate intentional discrimination in the selection of venires."  United States v. Williams, 264 F.3d at 569 (citing Alexander v. Louisiana, 405 U.S. at 628-29).  Whereas the inquiry in a Sixth Amendment fair cross-section claim focuses on the representativeness of the jury venire, the focus of a Fifth Amendment equal-protection claim is on whether members of a certain group have been intentionally denied the opportunity to serve on a jury.  See United States v. Grisham, 63 F.3d at 1081.

### ANALYSIS

There can be no argument that the jury venire satisfies the plain language of the Constitution and of the Federal Rules of Criminal Procedure.  Mr. and Ms. Gould also fail to establish that the

venire for this trial does not represent a fair cross-section of the State and District of New Mexico. Finally, Mr. and Ms. Gould do not show that the venire's composition reflects discrimination against members of a group to which they belong.

**I.      THE JURY'S COMPOSITION DOES NOT VIOLATE THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE.**

Mr. and Ms. Gould contend that the Sixth Amendment requires the jury venire in their case to include persons from the Las Cruces sub-category of the District of New Mexico, because that is one of the areas of the District in which one of the offenses allegedly took place. Mr. and Ms. Gould make that argument without referencing any case law directly on point to support their position. The Court finds, contrary to Mr. and Ms. Gould's representation, that the cross-section requirement of the Sixth Amendment does not require potential jurors to be selected from the geographic area(s) or congressionally designated division(s) in which their crimes are alleged to have occurred.

The Court reaches its conclusion based upon the Supreme Courts' holding that the Sixth Amendment does not require a jury to be drawn from an entire district rather than one division, see Ruthenberg v. United States, 245 U.S. at 482, the United States Court of Appeals for the Second Circuit's ruling that district courts not separated into congressionally assigned divisions can hold trial anywhere within their districts, see United States v. Fernandez, 480 F.2d at 730, the Eleventh and the Fifth Circuits' holdings that the Sixth Amendment does not require that jurors reside in the immediate area of the occurrence of the alleged offense, see United States v. Grisham, 63 F.3d at 1080; United States v. James, 528 F.2d at 1021, and rule 18's advisory commentary. The Court realizes that Second, Fifth, and Eleventh Circuit case law may serve only as persuasive, as opposed to controlling, authority, but believes that the Second, Fifth, an Eleventh Circuits' holdings on this

subject matter are well-reasoned and sound.

Mr. and Ms. Gould have not given the Court any reason, by citing clearly apposite case law, to question the positions of the Second, Fifth, and Eleventh Circuits, or rule 18's advisory committee. Mr. and Ms. Gould cite to <u>Salinger v. Loisel</u> and <u>Marvel v. Zerbst</u> for the proposition that cases should be remitted to the congressionally designated divisions where the offenses are charged to have been committed for trial, unless the accused consents otherwise.  These cases do not bear on the issue in question for two reasons.  First, Congress has not divided the District of New Mexico into divisions.  <u>See</u> 28 U.S.C. § 111.  Because the District is not divided into divisions, <u>Salinger v. Loisel</u> and <u>Marvel v. Zerbst</u> are inapplicable to this case, and Mr. and Ms. Gould may be tried anywhere within the District.  <u>See</u> <u>United States v. Fernandez</u>, 480 F.2d at 730 ("[W]hen a district is not separated into divisions, . . . trial at any place within the district is allowable under the Sixth Amendment . . . .").  Second, even if the District of New Mexico was broken up into congressionally assigned divisions, Congress has, subsequent to the Supreme Court's and the Tenth Circuit's holdings in <u>Salinger v. Loisel</u> and <u>Marvel v. Zerbst</u>, eliminated the divisional venue requirement at issue in those cases.  <u>See</u> Fed. R. Crim. P. 18, Notes of Advisory Comm. on 1979 Amend.; 28 U.S.C.A. § 1393, David D. Siegel, Commentary on 1988 Repeal of § 1393; 28 U.S.C. § 114.

Mr. and Ms. Gould suggest that there are vast differences between the Albuquerque/Santa and Las Cruces jury selection sub-categories, based solely on the fact that the Third Congressional District, which encompasses the Las Cruces sub-category, has consistently selected the Republican candidate, and that the First Congressional District, which includes portions of the Albuquerque/Santa Fe sub-category, usually selects the Democratic candidate.  Mr. and Ms. Gould ignore, however, the Second Congressional District, which includes a large portion of the Albuquerque/Santa Fe sub-

category, also consistently selects the Republican candidate, often by margins similar to those in the Third Congressional District.

In any case, Mr. and Ms. Gould do not allege that people from Las Cruces and Dona Ana county are so different from those people living in the Albuquerque/Santa Fe sub-category that the people in the venire do not represent a fair and reasonable cross-section of the District of New Mexico.  See United States v. Foxworth, 599 F.2d 1, 4 & n.4 (5th Cir. 1979)(stating that residents of counties, cities, and towns do not constitute a distinct, cognizable group for purposes of Sixth Amendment cross-section analysis); United States v. Test, 550 F.2d 577, 582 (10th Cir. 1976)("Mere geographical imbalance, absent evidence that an identifiable and cognizable segment of the community has been systemically excluded or underrepresented by reason of such imbalance, does not violate the statutory and constitutional requirement that the jury panel represent a 'fair cross section' of the community."); United States v. Traficant, 209 F. Supp. 2d 764, 780-81 (N.D. Ohio 2002)(holding that residents of a geographic area are not a distinct, cognizable group, and citing United States v. Test, which "made clear that a geographic area is not a distinct group," for support).

Considering the foregoing, the Court will deny that portion of the Goulds' motion seeking dismissal pursuant to the Sixth Amendment's cross-section requirement.

## II.     THE JURY'S COMPOSITION DOES NOT VIOLATE THE FIFTH AMENDMENT'S EQUAL-PROTECTION COMPONENT.

The Court will also deny the Goulds' request for dismissal based upon the equal-protection component of the Fifth Amendment's Due Process Clause.  Preliminarily, the Court notes that Mr. and Ms. Gould do not cite any authority in support of the position they take in their motion regarding the Fifth Amendment.  In any case, the Goulds' request under the Fifth Amendment fails, because

they do not to demonstrate, or even allege, the elements necessary to show a violation of the equal-protection component of the Fifth Amendment's Due Process Clause.  See Cunningham v. Zant, 928 F.2d at 1013 (stating that, to establish a violation of the Fifth Amendment's equal-protection component a defendant must show "[i] that he or she is a member of a group capable of being singled out for discriminatory treatment, [ii] that members of this group were substantially underrepresented on the venire, and [iii] that the venire was selected under a practice providing an opportunity for discrimination").  Mr. and Ms. Gould fail to identify a distinct, cognizable group capable of being singled out for discrimination.  See United States v. Test, 550 F.2d at 582 (stating that residents of a geographic area are not a distinct, cognizable group for Sixth Amendment cross-section purposes); United States v. Herbert, 698 F.2d 981, 984 (9th Cir. 1983)("The test for a constitutionally selected jury is the same, whether challenged under the [F]ifth and [S]ixth amendments of the Constitution . . . .").  Further, Mr. Gould and Ms. Gould fail to allege intentional discrimination in the selection of the jury venire, as is required to establish a Fifth Amendment violation in the jury context.  See United States v. Williams, 264 F.3d at 569.

Mr. and Ms. Gould do not contend that they are members of a group capable of being singled out for discriminatory treatment.  The District's practice of selecting venire does not discriminate against either Mr. or Ms. Gould.

**IT IS ORDERED** that the Defendants' Joint Motion Challenging Composition of Jury Venire is denied.

UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
   Acting United States Attorney
J. Miles Hanisee
   Assistant United States Attorney
Albuquerque, New Mexico

-- and --

Mark Blumberg
J. Evans Rice III
   Trial Attorneys
Civil Rights Division, Criminal Section
United States Department of Justice
Washington, D.C.

      *Attorneys for the Plaintiff*

Steven Aarons
Santa Fe, New Mexico

      *Attorney for Defendant John Gould*

Scott M. Davidson
Albuquerque, New Mexico

-- and --

Michael V. Davis
Santa Fe, New Mexico

      *Attorneys for Defendant Violet Gould*