1IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                        No. CR 03-2274 JB

JOHN GOULD and
VIOLET GOULD,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion for Reconsideration of Sentence, filed November 18, 2010 (Doc. 435)("Motion for Reconsideration"); (ii) the Defendant's Motion to Supplement Motion for Reconsideration of Sentence, filed December 10, 2010 (Doc. 436)("Motion to Supplement"); and (iii) the Defendant's Second Motion for Reconsideration of Sentence, filed January 13, 2011 (Doc. 438)("Second Motion for Reconsideration"). The Court held a hearing on February 23, 2011. The primary issues are: (i) whether the Court can modify Defendant John Gould's sentence; and (ii) if the Court can modify J. Gould's sentence, whether there was a violation of J. Gould's speedy trial right or due-process rights such that the Court should modify J. Gould's sentence or vacate the Judgment and Commitment ("J&C"). The Court will deny J. Gould's motions, because it does not believe that it can, several years after it orally pronounced J. Gould's sentence, modify the sentence. Moreover, the Court does not believe it should modify J. Gould's sentence or vacate the J&C, because it finds that, under the factors set forth in Barker v. Wingo, 407 U.S. 514 (1972), the delay between J. Gould's conviction and sentencing did not violate J. Gould's constitutional speedy trial rights,

because, although the delay between J. Gould's conviction and his sentencing was presumptively

prejudicial, J. Gould's actions were the primary cause of the delay, J. Gould did not assert his speedy

trial right, and J. Gould has not demonstrated substantial prejudice.  The Court also finds that the

delay between J. Gould's conviction and sentencing did not deprive J. Gould of his constitutional

right to a speedy trial or to due process of law, because, although the delay was presumptively

prejudicial, and the delay is attributable to the government, J. Gould did not assert his right to the

entry of the J&C or a to decision on his Second Motion for New Trial without unreasonable delay,

and J. Gould has not alleged particularized and substantial prejudice resulting from the delay.

## PROCEDURAL BACKGROUND

On August 25, 2004, a grand jury, in a Superseding Indictment, charged J. Gould with two

counts of violating 18 U.S.C. § 242 -- deprivation of rights under color of law -- and two counts of

violating 18 U.S.C. § 1512(b)(3) -- witness tampering.  See Superseding Indictment, filed August

25, 2004 (Doc. 91).  On April 2, 2007, a jury found J. Gould guilty of deprivation of rights under

color of law as charged in Counts 1 and 3 in the Indictment, and guilty of obstruction of justice as

charged in Counts 2 and 4 in the Indictment.  See Verdict, filed April 2, 2007 (Doc. 337).  J. Gould

was taken into custody following the jury's verdict.

On April 10, 2007, J. Gould filed Defendant Gould's Motion for New Trial.  See Doc. 345

("First Motion for New Trial").  In his motion, J. Gould argued that Plaintiff United States of

America committed a violation under Brady v. Maryland, 373 U.S. 83 (1963), by not producing a

2003 psychiatric evaluation of Verdin-Rendon.  See First Motion for New Trial at 8-10.  The Court

set a motion hearing for J. Gould's First Motion for New Trial for May 24, 2007.  See Doc. 355.

On May 16, 2007, the United States filed the United States' Motion to Continue Hearing on Motion

for New Trial, stating that J. Gould did not oppose the motion and that the wife of the United States'

counsel was about to have a baby, and counsel needed to care for her.  <u>See</u> Doc. 358.  On May 17, 2007, the Court issued an order, granting the United States' motion and continuing the motion hearing.  <u>See</u> Doc. 359.  The Court reset the motion hearing for July 6, 2007.  <u>See</u> Doc. 359.  On July 3, 2007, J. Gould filed a Motion to Continue 6 July 2007 Hearing, alleging that his counsel could not appear in person at the hearing.  <u>See</u> Doc. 366.  The Court entered an Order Granting Continuance on July 3, 2007 and rescheduled the hearing for August 9, 2007.  <u>See</u> Doc. 370.  On August 8, 2007, J. Gould filed an Unopposed Motion to Continue 9 August 2007 Hearing, stating that his counsel was unable to attend the hearing.  <u>See</u> Doc. 376.  The Court entered an Order Granting Continuance on August 8, 2007.  <u>See</u> Doc. 378.  The Court then reset the motion hearing for September 7, 2007, but the United States filed a Motion to Continue Motion Setting, alleging that its counsel was unavailable for the scheduled hearing because of a medical emergency.  <u>See</u> Doc. 383.  The Court entered an Order Granting Continuance on September 14, 2007.  <u>See</u> Doc. 384.  The Court then reset the motion hearing for October 11, 2007.  <u>See</u> Doc. 384.  On October 11, 2007, the Court rescheduled the motion hearing for October 12, 2007, because the United States Marshals did not transport J. Gould.  <u>See</u> Clerk's Minutes, dated October 11, 2007 (Doc. 389).

The Court held the motion hearing on October 12, 2007.  <u>See</u> Clerk's Minutes, filed October 19, 2007 (Doc. 390).  The Court issued a Memorandum Opinion and Order on January 2, 2008, denying J. Gould's motion.  <u>See</u> Memorandum Opinion and Order at 1, filed January 2, 2008 (Doc. 408)("Jan. 2, 2008 MOO").  The Court found that J. Gould did not satisfy his burden under rule 33(d) of the Federal Rules of Criminal Procedure of establishing that "the United States failed to produce evidence that was materially beneficial to his defense," because "the United States represents that it produced [the victim's] psychiatric evaluation to . . . [J.] Gould, and because the evaluation weighs against [the victim's] credibility as a witness."  Jan. 2, 2008 MOO at 1.

On January 15, 2008, the Court sent the parties notice that it set J. Gould's sentencing hearing for March 27, 2008.  J. Gould filed an Unopposed Motion to Continue 27 March 2008 Sentence Hearing on January 15, 2008, stating that his counsel would be unable to attend the sentencing hearing on that day.  See Doc. 412.  On January 17, 2008, J. Gould filed an Unopposed Motion to Supplement Motion to Continue 27 March 2008 Sentence Hearing, supplementing his statements that defense counsel would be unavailable and stating that opposing counsel would prefer an earlier setting if possible.  See Doc. 413.  The Court entered an Order Granting Continuance on January 18, 2008, stating that it would reschedule the hearing after receiving suggested dates from counsel.  See Doc. 414.

The Court set J. Gould's sentencing for April 18, 2008.  See Doc. 420.[1]  On April 16, 2008, the United States moved the Court for an order continuing J. Gould's sentencing.  See Unopposed Motion to Continue Sentencing Hearing, filed April 16, 2008 (Doc. 421).  The United States stated that, on February 26, 2008, it had filed a motion to disclose a mental health evaluation of the victim, Tampico Verdin-Rendon, upon the receipt of which, J. Gould's counsel indicated his intention to renew his motion for new trial, and that the parties agreed that resolution of this issue should precede J. Gould's sentencing.  On April 18, 2008, the Court entered an order granting the United States' motion and vacating J. Gould's sentencing.  See Doc. 424.  In the following eleven months, J. Gould's counsel did not file a second motion for new trial.

On March 25, 2009, the Court set J. Gould's sentencing for May 6, 2009.  See Doc. 430. The Presentence Investigation Report ("PSR") calculated J. Gould's total offense level as 37 and

---

[1] While the Court has not been able to reconstruct at a later date why it could not move the hearing up, it is likely the Court could not set J. Gould's sentencing at an earlier date because, as a result of its large case load, it had to attend to other business as well as to J. Gould's sentencing.

his criminal history category as I, establishing a guideline sentencing range of 210-262 months. See PSR ¶¶ 72, 75, at 19.  J. Gould filed Defendant John Gould's Sentencing Memorandum on May 5, 2009.  See Doc. 432.  In his sentencing memorandum, J. Gould objected to the PSR, argued that he should receive a role adjustment for being a minimal participant, and asked for a variance from the advisory guideline sentence.  On May 6, 2009, the day of J. Gould's sentencing, J. Gould's counsel filed J. Gould's Sealed Motion to Supplement Motion for New Trial.  See Doc. 433 ("Second Motion for New Trial").[2]  At the sentencing hearing, the Court asked J. Gould's counsel whether it should rule on his Second Motion for New Trial before it pronounced a sentence, or whether it should wait until after sentencing to rule on the Second Motion for New Trial. See Transcript of Hearing at 71:7-12 (taken May 6, 2009)(Court)("May 6, 2009 Tr.").  J. Gould's counsel stated that he would not object to the Court ruling on the motion after the sentencing and that he did not "see any harm to the defendant" in the Court ruling on the motion after sentencing J. Gould.  May 6, 2009 Tr. at 73:23-24 (Aarons).  The United States stated that it did not believe that there was anything procedurally improper about the Court passing a sentence and then addressing the motion for a new trial post-sentence.  See May 6, 2009 Tr. at 74:3-7 (Parker).[3]  The Court sustained some of J. Gould's objections to the PSR and varied from the guideline sentencing range, sentencing J. Gould to 97 months as to Counts 1, 2, 3 and 4, said terms to run concurrently.

---

[2] At the hearing on February 23, 2011, J. Gould's counsel represented that the delay in filing J. Gould's Second Motion for New Trial was a result of inadvertence on his part.  See Transcript of Hearing at 3:19-25 (taken February 23, 2011)(Court, Aarons)("Feb. 23, 2011 Tr.")(the Court's citations to the transcripts refer to the court reporter's original, unedited version; the final transcripts may contain slightly different page and/or line numbers).

[3] At J. Gould's sentencing on May 6, 2009, neither J. Gould nor his counsel complained about the delay between J. Gould's conviction and his sentencing, or about the conditions of his incarceration.

<u>See</u> Sentencing Clerk's Minutes, dated May 6, 2009 (Doc. 439).[4]

The Court worked on the opinion explaining its sentence and variance over the summer, finishing the opinion in August, 2009.  In late August 2009, the law clerk assigned to this matter alerted the Court's Courtroom Deputy Clerk ("CRD") that the opinion on the sentencing issues that J. Gould raised in his sentencing memorandum was ready for filing, but that the variance language for the J&C -- an explanation for the BOP and for the Sentencing Commission why the Court varied from the guideline sentencing range which is included in a packet that contains the judgment of the Court -- still needed to be prepared.

Routinely, the CRD maintains working files for all criminal cases.  For those criminal cases in which sentencing is pending, she maintains folders in a particular drawer in her office.  The file for this matter is voluminous, and, as a result, the CRD pulled the file from her drawer where the other working files are maintained and placed it on a credenza in her office.  The CRD maintains an internal list of all matters in which a J&C is pending because the Court chooses to issue an opinion on a sentencing memorandum, or because of departure and/or variance issues.

At the time the law clerk alerted her that the sentencing memorandum opinion and order was ready for filing, the CRD apparently removed that matter from the pending J&C list.  The CRD failed to enter the sentencing memorandum opinion and order.  Because it had completed the memorandum opinion and order and given it to the CRD, the Court assumed that the CRD had

_____

[4] Although the Court orally imposed J. Gould's sentence, it is the Court's understanding that the Bureau of Prisons ("BOP") generally does not designate prisoners to a particular BOP federal institution after the Court's oral sentence.  Instead, the BOP waits until receiving the J&C to designate prisoners.  When, however, a prisoner gets a sentence of time served, and the United States Marshals has the oral sentencing script with the Court's signature, they will release a prisoner or, as is often the case in New Mexico, transfer him or her to Immigration and Customs Enforcement.

entered the memorandum opinion and order and the J&C.[5]  The CRD does not recall defense counsel

contacting her at any point regarding the status of the Court's decision on J. Gould's Second Motion

for New Trial or regarding the status of the J&C.  J. Gould -- either through counsel or otherwise --

never contacted the Court regarding the status of his case.  J. Gould asserts that he repeatedly made

unsuccessful attempts through jail channels to be reclassified into the general population.  The CRD

recalls counsel for the United States inquiring about the status of the case on a few occasions.  In

November 9, 2010, the Court received a Criminal Justice Act, 18 U.S.C. § 3006A ("CJA")[6] letter

from J. Gould's counsel, indicating that the matter was still an open file.  In his letter, J. Gould's

counsel stated:

> Please accept the enclosed CJA voucher for work done to present.  I had hoped to
> hold off until a final bill, but so much time has elapsed with the case open and
> several CJA lawyers including myself have been striving to get all old CJA invoices
> into the system by tomorrow.

Letter from Stephen D. Aarons to the Honorable James O. Browning at 1 (dated October 6, 2010).[7]

---

[5] On average, the Court has approximately 106 to 120 civil cases, and approximately between
130 to 190 criminal defendants, at any one time.  Over 50% of the Tenth Circuit's criminal cases
come from the United States District Court for the District of New Mexico, and the Court has the
second highest number of criminal cases per federal judge of all the districts in the nation and the
highest in this circuit.  See U.S. District Court -- Judicial Caseload Profile,
http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Sep.pl (last visited March 11, 2011).
Because of the Court's large case load, particularly the criminal docket, at times the Court must
function on the squeaky wheel theory, and the Court must rely on defense counsel to notify the
Court if they believe that something has fallen through the cracks.

[6] Congress enacted the CJA "to insure effective representation for those charged with a crime
with the risk of being deprived of constitutional rights in ancillary proceedings.  United States v.
Gonzalez, 150 F.3d 1246, 1258 (10th Cir. 1998)(citation omitted).  CJA attorneys send a CJA
voucher to the Court, detailing attorneys fees and expenses, to obtain compensation for their efforts.

[7] Although this letter is dated October 6, 2010, the letter did not arrive in the Court's
chambers until November 9, 2010.  The letter took approximately a month to reach the Court's
chambers, because the letter first went to the CJA section for review -- as is the general practice for
this District -- to make sure all the charges were in compliance.

-7-

This point was the first time when the Court had some inclination that the case was not over.  The Court made inquiry of the CRD in mid-November, 2010.

On November 18, 2010, apparently only that same month realizing that the J&C had not been filed, J. Gould's counsel filed a Motion for Reconsideration of Sentence.  See Doc. 435.  J. Gould alleges that, as a result of the delay in the Court's entry of the J&C, he has suffered cruel-and-unusual punishment during the pendency of his sentence in violation of the Eighth Amendment, and asks the Court to find that the delay in imposing his sentence was unreasonable and not his fault. He asks the Court to reconsider his sentence and release him on time served.

On December 10, 2010, J. Gould filed a Motion to Supplement Motion for Reconsideration of Sentence.  See Doc. 436.  In his Motion to Supplement, J. Gould asserts that he was placed in administrative segregation at the county jail by March 2008 and that, without timely imposition of his sentence, his administrative segregation amounted to a deprivation of his liberty within the meaning of the due-process clause.  J. Gould asks the Court to find that the delay in imposing his sentence was unreasonable and to reconsider his sentence.  J. Gould asks the Court to either release him on time served or to reduce his sentence.

In mid to late December, 2010, the CRD reported to the Court that her review had found that the Court's sentencing memorandum opinion and order and J&C had not been entered.  The Court instructed her to file the sentencing memorandum opinion and order, without any changes, and to prepare and file the J&C.  On December 30, 2010, the Court's Memorandum Opinion and Order, granting in part and denying in part the relief J. Gould sought in his sentencing memorandum, and granting a variance from the guideline sentencing range, was entered.  See Doc. 437.

On January 13, 2011, J. Gould filed his Second Motion for Reconsideration of Sentence. See Doc. 438.  In his Second Motion, J. Gould asserts that he was placed in administrative

-8-

segregation following his incarceration on April 2, 2007 and that he has lived in isolation twenty-three hours a day.  He asserts that the delay between the sentencing on May 6, 2009 and the entry of the Court's Memorandum Opinion and Order on December 30, 2010, aggravated isolation's psychological effects.  J. Gould asks the Court to reconsider his sentence, and to either release him on time served or to reduce his sentence.

On January 19, 2011, the Judgment as to J. Gould was entered.  See Doc. 440.  On February 7, 2011, the United States filed its Opposition to Defendant Gould's Motion to Reconsider Sentence.  See Doc. 443 ("Opposition").  The United States argues that the Court should deny J. Gould's Motion for Reconsideration, because J. Gould cannot demonstrate that he was denied due process by virtue of the timing of the J&C, and because release from a properly imposed sentence is not a remedy for a claim that a defendant has suffered cruel and unusual punishment while incarcerated.  The United States argues that J. Gould cannot show that he has no fault and that he cannot demonstrate prejudice.

On February 8, 2011, J. Gould filed his Reply to Response to Motion for Reconsideration of Sentence.  See Doc. 445 ("Reply").  In his Reply, J. Gould applied the factors that the Supreme Court of the United States set forth in Barker v. Wingo to his case and argued that, based on these factors, he was deprived of his right to a speedy trial.  J. Gould also asserts that "[o]n more than one occasion the federal judge saw . . . [J.]Gould at the Sandoval County jail and did not question why he might be there for nearly four years."  Reply at 6-7.[8]

_____

[8] At the hearing, Judge Browning asked J. Gould's counsel what he meant when he stated that, on more than one occasion, "the federal judge" saw J. Gould at Sandoval County jail, because he did not have any recollection of every being at the jail.  See Tr. at 22:17-23:5 (Court, Aarons).  J. Gould's counsel represented that the statement in the Reply was based on J. Gould's recollection.  See Feb. 23, 2011 Tr. at 22:24 (Aarons).  After a conference between J. Gould and his counsel, J. Gould's counsel represented that J. Gould remembered some federal judges visiting the facility,

The United States filed a Supplemental Opposition to Defendant Gould's Motion to Reconsider Sentence on February 22, 2011.  See Doc. 447 ("Supplemental Opposition").  The United States contends that, despite his multiple pleadings, J. Gould has not cited any authority that stands for the proposition that a duly sentenced defendant should be released from his sentence because of the allegedly unconstitutional conditions of confinement, either before the pronouncement of the sentence, after the pronouncement of the sentence, or after the verdict.  The United States asserts that J. Gould did nothing before November 2010 to seek relief from his conditions and that none of the alleged delay was occasioned by the prosecution.  The United States further asserts that J. Gould cannot demonstrate substantial prejudice and that the prosecution did not occasion any of the delay in this matter.

J. Gould filed a Reply to Supplemental Opposition to Motion for Reconsideration of Sentence on February 23, 2011.  See Doc. 448 ("Supplemental Reply").  In his Supplemental Reply, J. Gould asserts that of the 1,423 days that have elapsed since the jury's verdict, only twenty-two days should be attributed to defense delay in sentencing and that a delay of three years and eleven months is presumptively prejudicial.  He reasserts that the Barker v. Wingo factors weigh in his favor.[9]

_____

including the Honorable Carmen E. Garza, United States Magistrate Judge.  See id. at 23:13-15 (Aarons).  J. Gould's counsel represented that J. Gould thought that Judge Browning was one of the judges.  See id. at 23:13-15 (Aarons).  J. Gould's counsel stated that, if J. Gould's recollection was not true, the Court could correct the record.  See Feb. 23, 2011 Tr. at 23:15-16.  Judge Browning has toured La Tuna, Dearson Charities, a juvenile facility in Santa Fe, and Terminal Island in Los Angeles, California, but he does not believe that he has been to the Sandoval County jail.  See id. at 23:20-24 (Court).  He practiced law at the Sandoval County courthouse before he became a judge in 2003, but is not certain where the new courthouse is -- if it has moved -- or where the jail is. See id. at 23:23-24:11 (Court, Aarons).

[9] During this time, J. Gould did not bring a civil action against the Sandoval County jail for violations of his Eighth Amendment, procedural due-process, or substantive due-process rights, or

At the hearing on February 23, 2011, J. Gould's counsel made an offer of proof, stating that

J. Gould was prepared to testify.  See Feb. 23, 2011 Tr. at 6:21-22.  J. Gould's counsel stated that

J. Gould would testify that

> were he sentenced and put into BOP he would have had educational opportunities where in segregation he had none.  He wasn't allowed to work, and people that have a trustee level of status as he has, with no misconduct, they're given little jobs around the jail or prison that I think they get paid, you know, pennies, really, but it's more just having a job and doing something during the day, and he wasn't allowed to work because of the segregation status and the need to really protect him from inmates that might look unkindly on a former correctional officer.  Something very important to John is that he couldn't have religious services, either the church or they have Bible study programs in most jails, and in all prisons, I'm sure.  And again, it was because he couldn't associate with other inmates.  Normally, people in general population or people in BOP in particular can have contact visits with family, and he could only visit through the glass via a telephone.  Normal inmates get out of cell, uncuffed during the general day.  He had to stay in his cell, and if he was allowed to come out of the cell for some need he would need to be cuffed before he left the cell. . . . People in to BOP would have a a majority of the day with free access out of the cell. Here, he was locked in his cell 23 hours a day with one hour where he's allowed out to be alone.  BOP inmates have access to shower every day.  He could only shower three times a week.  Access to family's restricted, no social interaction with other inmates. . . .  People have their security level reduced with good  behavior in the BOP general population, whereas he had to be stuck in super max as an administrative segr[e]gee.  He wasn't able to request transfer to a close facility closer to his home where he would have been able to after 18 months in BOP.  The biggest thing, I think, is just activities that could occupy his time during the day and interaction with other human beings.  He reports to me that he's lost 120 pounds from 280 down to 160.  It looks like he's been in something like segregation.

Feb. 23, 2011 Tr. at 7:3-8:25 (Aarons).[10]  The United States challenged the proffer to the "extent that

[J. Gould's counsel] [was] suggesting that . . . [J.] Gould could get up on a witness stand and testify

---

for a writ of habeas corpus.  The Court is not suggesting, however, that J. Gould's decision not to file a civil action against Sandoval County jail or to bring a habeas action prohibits him from bringing his arguments in this matter.

[10] At trial, J. Gould weighed approximately 280 pounds.  He currently weighs approximately 160 pounds.  Although J. Gould has lost a large amount of weight, it appeared J. Gould had lost much of that weight by the time of his sentencing hearing.

to what conditions he would be assigned by the Bureau of Prisons because [it] d[id]n't think that he

ha[d] any personal knowledge of that."  Feb. 23, 2011 Tr. at 9:6-11 (Parker).

> To the extent that his proffer is that . . . he's been in solitary confine[ment] . . . most
> of the time and that he has not been allowed to do these things that he hasn't been
> allowed to do, the Government would be willing to concede that for the limited
> purpose of arguing this hearing.

Feb. 23, 2011 Tr. at 9:12-16 (Parker).  J. Gould's counsel represented that he accepted the United

States' concession.  See Feb. 23, 2011 Tr. at 9:23 (Aarons).  J. Gould's counsel represented that

J. Gould was making a Sixth Amendment and not an Eighth Amendment claim, and that he was

asking the Court to find a Barker v. Wingo violation and to re-exercise its discretion to reduce J.

Gould's sentence.  See Feb. 23, 2011 Tr. at 17:12-14 (Aarons)("And this is a Sixth Amendment, not

an Eighth Amendment claim.  We're asking the Court to find that there was a Barker violation and

to simply reexercise its discretion.").[11]

## LAW REGARDING MODIFICATION OF SENTENCE

"A district court does not have inherent authority to modify a previously imposed sentence;

it may do so only pursuant to statutory authorization."  United States v. Mendoza, 118 F.3d 707, 709

(10th Cir. 1997). As the Tenth Circuit has explained:

---

[11] Although J. Gould's Motion for Reconsideration mentions the Eighth Amendment, at the hearing, J. Gould represented that he was making a Sixth Amendment claim and not an Eighth Amendment claim.  See Feb. 23, 2011 Tr. at 17:12-14 (Aarons)("And this is a Sixth Amendment, not an Eighth Amendment claim.  We're asking the Court to find that there was a Barker violation and to simply reexercise its discretion.").  The Court will therefore address J. Gould's incarceration conditions under the analysis set forth in Baker v. Wingo regarding the Sixth Amendment speedy trial right.  In his Motion for Reconsideration, J. Gould also mentions the doctrine of credit for time at liberty.  The United States Court of Appeals for the Tenth Circuit has concluded, "where a prisoner is discharged from a penal institution, without any contributing fault on his part, and without violation of conditions of parole, that his sentence continues to run while he is at liberty." White v. Peralman, 42 F.2d 788, 789 (10th Cir. 1930).  After a jury convicted him, J. Gould was incarcerated.  He has not been discharged since he was taken into custody.  This doctrine is therefore not applicable in this matter.

A district court is authorized to modify a Defendant's sentence only in specified instances where Congress has expressly granted the court jurisdiction to do so. Section 3582(c) of Title 18 of the United States Code provides three avenues through which the court may "modify a term of imprisonment once it has been imposed." A court may modify a sentence: (1) in certain circumstances "upon motion of the Director of the Bureau of Prisons"; (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; or (3) "upon motion of the defendant or the Director of the Bureau of Prisons," or on the court's own motion in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission."

United States v. Blackwell, 81 F.3d 945, 947-48 (10th Cir. 1996)(citations and footnote omitted).[12]

Rule 35 authorizes a district court to reduce or correct a sentence in certain limited situations.

See Fed. R. Crim. P. 35. Rule 35 of the Federal Rules of Criminal Procedure states:

> **(a) Correcting Clear Error.** Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error.
>
> **(b) Reducing a Sentence for Substantial Assistance.**
>
>> **(1) In General.** Upon the government's motion made within one year of sentencing, the court may reduce a sentence if the defendant, after sentencing, provided substantial assistance in investigating or prosecuting another person.
>>
>> **(2) Later Motion.** Upon the government's motion made more than one year after sentencing, the court may reduce a sentence if the defendant's substantial assistance involved:
>>
>>> **(A)** information not known to the defendant until one year or more after sentencing;
>>>
>>> **(B)** information provided by the defendant to the government within one year of sentencing, but which did not become useful to the government until more than one year after sentencing; or
>>>
>>> **(C)** information the usefulness of which could not reasonably have been anticipated by the defendant until more than one year after

---

[12] Congress has twice amended 18 U.S.C § 3582, in 1996 and 2004, since the Tenth Circuit's decision in United States v. Blackwell; however, neither of these amendment substantively affects the Tenth Circuit's analysis.

-13-

sentencing and which was promptly provided to the government after
its usefulness was reasonably apparent to the defendant.

**(3) Evaluating Substantial Assistance.** In evaluating whether the defendant
has provided substantial assistance, the court may consider the defendant's
presentence assistance.

**(4) Below Statutory Minimum.** When acting under Rule 35(b), the court
may reduce the sentence to a level below the minimum sentence established
by statute.

**(c) "Sentencing" Defined.** As used in this rule, "sentencing" means the oral
announcement of the sentence.

Fed. R. Crim. P. 35.

In United States v. Blackwell, the Tenth Circuit reversed the district court's re-sentencing
of a co-defendant seventy-two days after the original sentencing. See 81 F.3d at 946. In that case,
the defendant, who received an initial sentence of 15-months imprisonment, moved the district court
for a re-sentencing, because "three days prior to his sentencing, Defendant's supplier pleaded guilty
to distributing fifty-five ounces of cocaine and the United States District Court for the District of
Utah sentenced her to probation." 81 F.3d at 946. The district court held a re-sentencing hearing
seventy-two days after the original sentencing, and, at that hearing, reduced the defendant's sentence
to "three-years probation, with six-months home detention." 81 F.3d at 947. In explaining its
authority to modify the defendant's sentence, the district court relied on "two alternative sources of
authority . . . : (1) the court's 'inherent jurisdiction' to right injustices, and (2) Fed.R.Crim.P. 35[.]"
81 F.3d at 947.

The Tenth Circuit in United States v. Blackwell rejected the district court's reliance on rule
35, rule 36, or its "inherent authority," and concluded that "the court lacked jurisdiction to
resentence Defendant." United States v. Blackwell, 81 F.3d at 949. After recognizing that a district
court is authorized to modify a sentence only where Congress has expressly granted the district court

-14-

jurisdiction to do so and that 18 U.S.C. § 3582 provides three avenues through which a court may modify a term of imprisonment once it has been imposed: (i) upon motion of the Director of the BOP in certain circumstances; (ii) to the extent permitted by statute or rule 35; or (iii) in cases where the Sentencing Commission lowered the applicable sentencing range.  See 81 F.3d at 947-48.  The Tenth Circuit held that avenues one and three were inapposite, and that rule 35 was the "only potential source of authority to support the district court's modification of Defendant's sentence. 81 F.3d at 948.  Rule 35(a) did not apply, "because the court did not correct Defendant's sentence within seven days after the original sentence was imposed, but resentenced Defendant seventy-two days later." 81 F.3d at 948 (discussing then rule 35(c)).[13]  The Tenth Circuit also held that rule 35(b) did not apply: "Because subsection (b) applies only to motions made by the government, a defendant cannot invoke Rule 35(b) and empower the court to reduce his sentence."  81 F.3d at 948.  See United States v. Corral, No. CR 05-0469 JB, 2006 WL 1308237, at *3 (D.N.M. Mar. 28, 2006)(Browning, J.)(denying motion to reconsider sentence based on argument that incarceration prevented defendant from earning a living, paying taxes, and supporting his children, and stating that the Court lacks power to change his sentence); United States v. Myers, 375 F. Supp. 2d 1293, 1297-98 (D.N.M. 2005)(Browning, J.)(denying motion to modify sentence based on serious changes in defendant's medical condition, because the Court, in the exercise of its equitable powers, is not free to ignore the requirements that Congress has set forth).

## LAW REGARDING UNREASONABLE DELAY IN CRIMINAL CASES

Although the time for sentencing is within the trial judge's sound discretion, that discretion is not totally unfettered.  Rule 32 provides that the "court must impose sentence without unnecessary

---

[13] The period of time in which a court could correct these "clear" errors was extended from seven days to fourteen days by amendments that took effect on December 1, 2009.

delay." Fed. R. Crim. P. 32(b)(1). "The Sixth Amendment guarantees all criminal defendants the

right to a speedy trial; [the Tenth Circuit] ha[s] applied this right from arrest through sentencing."

United States v. Yehling, 456 F.3d 1236, 1243 (10th Cir. 2006)(citing Perez v. Sullivan, 793 F.2d

249, 253 (10th Cir. 1986); Pollard v. United States, 352 U.S. 354, 361 (1957)).[14] "Protection against

---

[14] The parties have not directed the Court's attention to, and the Court has not found, a case which discusses when a sentence is imposed for purposes of the Sixth Amendment -- whether it is imposed at oral sentencing or at entry of the written judgment. There is a general rule, however, that

> the 'judgment' in a criminal case is the sentence orally pronounced from the bench[;] [t]herefore, if there is any conflict between the oral pronouncement of the judgment and sentence and the written judgment itself, the terms of the oral pronouncement control, except where the orally pronounced sentence is ambiguous and does not resolve the conflict.

9A Federal Procedure, Lawyers Edition ¶ 22:1732. See United States v. Villano, 816 F.2d 1448, 1450-51 (10th Cir. 1987)("It is a firmly established and settled principle of federal criminal law that an orally pronounced sentence controls over a judgment and commitment order when the two conflict. This rule is recognized in virtually every circuit and has been the law in this circuit since the 1930's." (footnote omitted)). As the Tenth Circuit has stated:

> The sentence orally pronounced from the bench is the sentence. One of the purposes of the written judgment and commitment order is to provide evidence of the sentence. The promulgation of Fed.R.Crim.P. 32(b)(1) has not changed the rule that the judgment in a criminal case is the sentence orally pronounced from the bench. Although Rule 32(b) has "enhanced the prestige of the written judgment," Baca, 383 F.2d at 157, it has not abrogated the rule that the judgment in a federal criminal case is the sentence pronounced from the bench.

United States v. Villano, 816 F.2d at 1451-52 (footnote omitted). This rule derives from the principle that the "imposition of punishment in a criminal case affects the most fundamental human rights: life and liberty. Sentencing should be conducted with the judge and defendant facing one another and not in secret." United States v. Barwig, 568 F.3d 852, 855-86 (10th Cir. 2009). Although this rule is not taken from the context of the Sixth Amendment, the Court believes that this principle of federal criminal law, which is grounded in Sixth Amendment requirements that the defendant be physically present at sentencing, see United States v. Townsend, 33 F.3d at 1231 ("This rule is grounded in the Sixth Amendment which requires that a defendant be physically present at sentencing. When a judgment of conviction containing the sentence is officially entered of record, only members of the clerk's office are present."), indicates that, for purposes of the Sixth Amendment, sentencing means the time the district court orally pronounces the defendant's sentence.

unreasonable delay in the appellate process is similarly provided by the Fifth Amendment right to due process of law." United States v. Yehling, 456 F.3d at 1242 (citing Harris v. Champion, 15 F.3d 1538, 1558 (10th Cir. 1994)(applying, through the Fourteenth Amendment, the right to due process when there was a delay in adjudicating a petitioner's direct criminal appeal)).[15]  In evaluating claims of unreasonable delay in criminal cases, the Tenth Circuit reviews questions of law de novo and questions of fact for clear error.  See United States v. Yehling, 456 F.3d at 1242 (citations omitted).

In Barker v. Wingo, the Supreme Court established a balancing test to determine whether a particular delay violates a defendant's right to a speedy trial.  407 U.S. at 530.  See United States v. Yehling, 456 F.3d at 1243.  The Supreme Court identified four factors that a court should assess and balance: (i) the length of delay; (ii) the reason for the delay; (iii) the defendant's assertion of his speedy trial right; and (iv) whether the delay prejudiced the defendant.  See Barker v. Wingo, 407 U.S. at 533; United States v. Yehling, 456 F.3d at 1243.  No one of the Barker v. Wingo factors is "necessary or sufficient to conclude a violation has occurred."  United States v. Toombs, 574 F.3d 1262, 1274 (10th Cir. 2009)(citation omitted).   "Instead, the factors are related and must be considered together along with other relevant circumstances."  United States v. Toombs, 574 F.3d

---

[15]  The Tenth Circuit addressed a situation where a delay in a case occurred after a defendant's sentence was imposed, but before he filed a notice of appeal.  See United States v. Yehling, 456 F.3d at 1243.  The Tenth Circuit stated that,

> Nevertheless, the interests protected by preventing unreasonable delay from arrest through sentencing and throughout the appellate process are also endangered by delay in deciding a motion for new trial based on newly discovered evidence. . . . Because of these similarities, we see no reason to exempt a motion for new trial based on newly discovered evidence from protection against unreasonable delay. We therefore examine the delay in this case[, using the test set forth in Barker v. Wingo,] to determine if it rises to the level of a constitutional violation.

United States v. Yehling, 456 F.3d at 1243.

at 1274 (citation omitted).  "Although <u>Barker</u> addressed only a defendant's right to a speedy trial, [the Tenth Circuit] subsequently adopted the <u>Barker</u> analysis in determining whether a defendant's due process right to a timely direct criminal appeal in state court had been violated."  <u>United States v. Yehling</u>, 456 F.3d at 1243 (citation omitted).

"The first factor, length of delay, functions as a 'triggering mechanism.'"  <u>United States v. Yehling</u>, 456 F.3d at 1243 (quoting <u>Barker v. Wingo</u>, 407 U.S. at 530).  'The remaining factors are examined only if the delay is long enough to be presumptively prejudicial."  <u>United States v. Yehling</u>, 456 F.3d at 1243 (citing <u>Barker v. Wingo</u>, 407 U.S. at 530).  The Tenth Circuit has stated that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice."  <u>United States v. Batie</u>, 433 F.3d 1287, 1290 (10th Cir. 2006)(citing <u>Doggett v. United States</u>, 505 U.S. 647, 652 n.1 (1992); <u>Jackson v. Ray</u>, 390 F.3d 1254, 1261 (10th Cir. 2004)).

"The second factor, the reason for the delay, 'weighs against the government in proportion to the degree to which the government caused the delay.'"  <u>United States v. Yehling</u>, 456 F.3d at 1244 (quoting <u>United States v. Batie</u>, 433 F.3d at 1291).  "Purposeful delay weighs heavily against the government."  <u>United States v. Yehling</u>, 456 F.3d at 1244 (citing <u>Barker v. Wingo</u>, 407 U.S. at 531). "A more neutral reason such as negligence or overcrowded courts [is] weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  <u>United States v. Yehling</u>, 456 F.3d at 1244 (citation omitted).

"The third factor assesses whether a defendant asserted his right to adjudication without unreasonable delay."  <u>United States v. Yehling</u>, 456 F.3d at 1244 (citation omitted).  "In <u>Barker</u>, the Supreme Court rejected the contention that a defendant who fails to demand a speedy trial waives the right."  <u>United States v. Yehling</u>, 456 F.3d at 1244 (citing <u>Barker v. Wingo</u>, 407 U.S. at 528).

-18-

"The Court also declined to adopt the antithetical view that a defendant has no duty to assert the right." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at at 528). "Instead, the Court determined a defendant's assertion of, or failure to assert, his right to a speedy trial is merely one factor to be considered in determining whether the right has been violated." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at at 528).

The final factor set forth in Barker v. Wingo analyzes whether the delay prejudiced the defendant. See United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 532). The Tenth Circuit has recognized that, "[w]hile a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, we have great reluctance to find a speedy trial deprivation where there is no prejudice." Perez v. Sullivan, 793 F.2d at 256 (citing Moore v. Arizona, 414 U.S. 25, 26 (1973); United States v. Martinez, 776 F.2d 1481, 1483 (10th Cir. 1985); United States v. Brown, 600 F.2d 248, 254 (10th Cir. 1979), cert. denied, 444 U.S. 917 (1979)). If there is extreme delay, "the defendant need not present specific evidence of prejudice and instead may rely on the presumption of prejudice created by the extreme delay." United States v. Toombs, 574 F.3d at 1275 (citing Doggett v. United States, 505 U.S. at 655). If the delay is not sufficiently extreme for the defendant to rest on the presumption of prejudice created by the extreme delay, a defendant must make "a particularized showing of prejudice." United States v. Toombs, 574 F.3d at 1275. In determining whether the defendant has made a "particularized showing of prejudice," a court should consider "the three interests the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532). See United States v. Yehling, 456 F.3d at 1244 (citation omitted). "The most important of these interests is the

-19-

impairment or hindrance of the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532). "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." Barker v. Wingo, 407 U.S. at 532. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." United States v. Toombs, 574 F.3d at 1275 (citation omitted). "[O]nce a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant." United States v. Yehling, 456 F.3d at 1245 (citation omitted). "Post-conviction prejudice therefore 'must be substantial and demonstrable.'" United States v. Yehling, 456 F.3d at 1245 (citation omitted).

## ANALYSIS

The Court will deny J. Gould's motions, because it does not believe that it can, several years after it orally pronounced J. Gould's sentence, modify the sentence. Even the Court could modify J. Gould's sentence, it finds that, under the factors set forth in Barker v. Wingo, the delay between J. Gould's conviction and sentencing did not violate J. Gould's speedy trial rights, because, although the delay between J. Gould's conviction and his sentencing was presumptively prejudicial, J. Gould's actions were the primary cause of the delay, J. Gould did not assert his speedy trial right, and J. Gould has not demonstrated substantial prejudice. The Court also finds that the delay between J. Gould's conviction and sentencing did not deprive J. Gould of a speedy trial or due process of law, because, although the delay was presumptively prejudicial, and the delay is attributable to the government, J. Gould did not assert his right to the entry of the J&C or to a decision on his Second Motion for New Trial without unreasonable delay, and J. Gould has not alleged particularized and substantial prejudice resulting from the delay.

-20-

I.   **THE COURT DOES NOT HAVE THE AUTHORITY TO MODIFY J. GOULD'S SENTENCE.**

In each of his motions, J. Gould asks the Court to find that the delay in imposing his sentence was unreasonable and to, upon finding that the delay was unreasonable, reconsider and reduce his sentence.  <u>See</u> Motion for Reconsideration at 4 ("WHEREFORE defendant requests that the court: . . . [r]econsider defendant's sentence . . . ."); Motion to Supplement at 3-4 (asking the court to reconsider J. Gould's sentence); Second Motion for Reconsideration at 2 (asking the court to "[r]econsider defendant's sentence"); Reply at 10 (requesting that the court "[r]econsider defendant's sentence"); Supplemental Reply at 2 ("In this Reply, we will return to those factors . . . and address how this pending motion for new trail has no bearing upon any reconsideration of defendant's sentence."); Supplemental Reply at 7 ("Mr. Gould does not seek a dismissal, but rather a reconsideration of his sentence in light of the fact that, through no fault of his own, he has remained in isolation . . . for three years and eleven months after the verdict."); Supplemental Reply at 11 ("Rather the pending motion for reconsideration simply calls upon the court to . . . exercise its relatively unfettered discretion in fashioning an appropriate remedy in terms of a reduced sentence . . . ."); Feb. 23, 2011 Tr. at 20:5-14 (Court, Aarons)("THE COURT: . . . But what I just heard you saying was you really want me to reopen the sentence and reconsider the sentence . . . .  MR. AARONS: That's correct.").

Once a sentence is imposed, "it is final, and the trial judge's authority to modify it is narrowly circumscribed."  <u>Dolan v. United States</u>, 130 S. Ct. 2533, 2545 (2010).  "A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authority."  <u>United States v. Mendoza</u>, 118 F.3d at 709 (citing <u>United States v. Moore</u>, 83 F.3d 1231, 1233 (10th Cir. 1996)).

Section 3582 of Title 18 of the United States Code provides three avenues through which a court may modify a term of imprisonment once the term has been imposed.  Section 3582 states that "[t]he court may not modify a term of imprisonment once it has been imposed except:" (i) in certain circumstances "upon motion of the Director of the Bureau of Prisons;" (ii) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure;" or (iii) in cases where the applicable sentencing range "has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."  18 U.S.C. § 3582(c).

The only potential source of authority for modification of J. Gould's sentence is rule 35. Rule 35 "empowers a court to correct or reduce a [d]efendant's sentence in two specified instances." United States v. Green, 405 F.3d 1180, 1184-85 (10th Cir. 2005).  Rule 35(a) states: "Within 14 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."  Fed. R. Crim. P. 35(a).  Rule 35(b) allows the court to reduce a sentence upon "the government's motion made within one year of sentencing" if the defendant, "after sentencing, provided substantial assistance in investigating or prosecuting another person."  Fed. R. Crim. P. 35(b).  The Supreme Court has recognized that "[t]he Rule of Criminal Procedure allowing extensions of time expressly provides that '[t]he court may not extend the time to take any action under Rule 35, except as stated in that rule.'"  Dolan v. United States, 130 S. Ct. at 2545 (citing Fed. R. Crim. P. 45).

Rule 35(b) is inapposite in this case, because J. Gould has not provided substantial assistance and the United States has not moved for a reduction in his sentence.  Rule 35(a) allows for correction of a sentence that resulted from arithmetical, technical, or clear error within 14 days after the sentencing.  The Court orally sentenced J. Gould on May 6, 2009.  Rule 35 defines sentencing as "the oral announcement of the sentence."  Fed. R. Crim. P. 35(c).  Similarly, the Tenth Circuit

has held that, for purposes of rule 35, a "sentence is imposed upon a criminal defendant . . . when the [district] court orally pronounces sentence from the bench." United States v. Green, 405 F.3d at 1185 (alteration in original).  The Tenth Circuit has discussed the intent behind rule 35:

> In 1991, Rule 35 was amended to provide sentencing courts with a seven-day period in which to correct arithmetical, technical, or other clear error. Fed.R.Crim.P. 35, Advisory Committee Notes on 1991 Amendments.  "The authority to correct a sentence under this subdivision [wa]s intended to be very narrow and to extend only to those cases in which an obvious error or mistake ha[d] occurred . . . ." Id.  "The subdivision [wa]s not intended to afford the court the opportunity to reconsider the application or interpretation of the sentencing guidelines or for the court simply to change its mind about the appropriateness of the sentence." Id.  "Nor should it be used to reopen issues previously resolved at the sentencing hearing through the exercise of the court's discretion with regard to the application of the sentencing guidelines." Id.

United States v. Green, 405 F.3d at 1185 (footnote omitted).[16]  The Tenth Circuit has held that the fourteen-day time limit is jurisdictional.  See United States v. Green, 405 F.3d at 1185-86 ("We have held that this seven-day time limit is jurisdictional."  (citing United States v. Blackwell, 81 F.3d at 948 & n.4; United States v. Townsend, 33 F.3d 1230, 1231 (10th Cir. 1994))).  Because more than fourteen days have passed since the sentencing, the Court cannot legally correct J. Gould's sentence under rule 35(a).  See United States v. Green, 405 F.3d at 1183, 1188 (striking the district court's re-sentencing of the defendant, because the district court did not have jurisdiction to re-sentence the defendant, when the re-sentencing was conducted more than seven days after the oral sentencing).  Moreover, J. Gould is not arguing that there was arithmetical, technical, or clear error in the sentence the Court orally imposed.  Instead, he is arguing that the delay in the entry of the J&C was unreasonable, such that the Court should reconsider and reduce J. Gould's sentence.  Because more than fourteen days have passed since sentencing, and because J. Gould is not arguing that the

---

[16] The current version of Rule 35(a) extends the time to fourteen days from seven days as a result of amendments that took effect on December 1, 2009.

Court's oral pronouncement of the sentence contained arithmetical, technical, or clear error, the Court cannot legally correct the sentence under rule 35(a).  See Dolan v. United States, 130 S. Ct. at 2546 ("If the error is clear, [technical, or arithmetical] and raised within 14 days, it might be corrected under Rule 35.").  The Court therefore does not have the authority to modify J. Gould's sentence.

## II.   THE DELAY BETWEEN J. GOULD'S CONVICTION AND SENTENCING DID NOT VIOLATE J. GOULD'S SPEEDY TRIAL RIGHTS.

J. Gould argues that, under the balancing test set forth in Barker v. Wingo, his right to a speedy trial was violated.  The United States argues that the Court should deny J. Gould's motions.

The first question is whether the Court should even decide this Sixth Amendment issue. J. Gould asks the Court to reconsider his sentence because of this Sixth Amendment violation; he does not ask for any other relief.  The Court has decided to deny the motions for lack of jurisdiction, so it lacks jurisdiction to consider the motions as proposed.

Nevertheless, J. Gould has raised a Sixth Amendment violation.  A defendant can file a motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his or her sentence, because there was a Sixth Amendment violation.  See United States v. Walters, 163 F. App'x 674, 677 (10th Cir. 2006)(stating that the defendant filed "a timely motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence," and that one of the issues he raised was a Sixth Amendment violation); United States v. Ruth, 963 F.2d 383, at *1 (10th Cir. 1992)("[The defendant] . . . filed a motion in the district court to vacate, set aside or correct his sentence, alleging that he was denied his Sixth Amendment right to effective assistance of counsel . . . . [T]he court granted [the] motion . . . ."); Wall v. Purdy, 465 F.2d 933, 933 (5th Cir. 1972)(vacating the district court's order denying habeas corpus relief and remanding, because if there was no valid waiver of the appellant's Sixth

-24-

Amendment right to counsel, then "he is entitled either to have his conviction and sentence of imprisonment set aside . . . .").[17]  It may be that it would be best to address these on § 2255 rather than by the district court in the original criminal proceeding or by the Court of Appeals on direct appeal.  Nevertheless, the Tenth Circuit has addressed whether an allegedly unreasonable delay constituted denial of a speedy trial and due process of law on a defendant's direct appeal.  See United States v. Yehling, 456 F.3d at 1242.  Such action suggests that the district court may also address these issues if raised in the original criminal proceeding.  Because defendants can collaterally attack their sentences, alleging constitutional violations in a district court, and because the Tenth Circuit has addressed whether a delay violated a defendant's constitutional rights on direct appeal, the Court believes that it is not unnecessarily deciding the constitutional issues or that it lacks jurisdiction to do so.[18]

"The Sixth Amendment guarantees all criminal defendants the right to a speedy trial; [the Tenth Circuit] ha[s] applied this right from arrest through sentencing."  United States v. Yehling, 456 F.3d at 1243 (citing Perez v. Sullivan, 793 F.2d at 253; Pollard v. United States, 352 U.S. at 361).  "Although the Supreme Court has never addressed the question of whether the four-part standard of evaluation in Barker should be applied in a post-trial situation, numerous circuit and

---

[17] "In most jurisdictions claims of ineffective assistance are brought in postconviction collateral proceedings."  Barkell v. Crouse, 468 F.3d 684, 694 (10th Cir. 2006)(citing Massaro v. United States, 538 U.S. 500, 504, 508 (2003)(agreeing with most federal circuits and a "growing majority of state courts" that ineffectiveness claims need not be raised on direct appeal and that "in most cases [postconviction collateral proceedings are] preferable to direct appeal for deciding claims of ineffective assistance.")).

[18] At the February 23, 2011 hearing, the United States took the position that the Court had jurisdiction to decide this issue as long as the motion for new trial was pending and that it would not take the position that a notice of appeal, when filed, was untimely.  See Feb. 23, 2011 Tr. at 34:4-9 (Parker).

district courts have applied the factors set forth in <u>Barker</u> in evaluating delay in sentencing cases." <u>Perez v. Sullivan</u>, 793 F.2d at 253-54 (citations omitted).  The Tenth Circuit has stated that it generally agrees with the application of the factors set forth in <u>Barker v. Wingo</u> to a court's evaluation of delay in sentencing cases.  <u>See</u> <u>Perez v. Sullivan</u>, 793 F.2d at 254.  The Court will therefore apply the factors set forth in <u>Barker v. Wingo</u> to determine whether the delay violated J. Gould's right to a speedy trial.

### A.   THE LENGTH OF DELAY IS PRESUMPTIVELY PREJUDICIAL.

J. Gould asserts that over three years and ten months have elapsed since the jury's verdict on April 2, 2007.  J. Gould asserts that two of those years passed before his sentencing hearing on May 6, 2009 and that two months of the pre-sentence delay must be attributed to him when his counsel filed a motion to continue the sentencing hearing.  J. Gould asserts that this amount of time is presumptively prejudicial.

"The first factor, length of delay, functions as a 'triggering mechanism.'" <u>United States v. Yehling</u>, 456 F.3d at 1243 (quoting <u>Barker v. Wingo</u>, 407 U.S. at 530).  'The remaining factors are examined only if the delay is long enough to be presumptively prejudicial." <u>United States v. Yehling</u>, 456 F.3d at 1243 (citing <u>Barker v. Wingo</u>, 407 U.S. at 530).

The Tenth Circuit applies the speedy trial right from arrest to sentencing.  <u>See</u> <u>United States v. Yehling</u>, 456 F.3d at 1243 (citations omitted).  J. Gould argues that an unreasonable delay resulted from the delay between the jury's verdict and the sentencing.  At this point, the Court will not consider the period of time following the Court's oral pronouncement of J. Gould's sentence at the May 6, 2009 sentencing hearing in its analysis whether J. Gould's speedy trial rights were violated. The time that the Court will consider at this time is the period between the jury's verdict and the Court's oral announcement of J. Gould's sentence at his sentencing hearing.  "A sentence orally

-26-

imposed governs a conflicting, later-written sentence of the court." United States v. Townsend, 33 F.3d at 1231 (citing States v. Sasser, 974 F.2d 1544, 1562 (10th Cir. 1992); United States v. Villano, 816 F.2d 1448, 1450 (10th Cir. 1987)).  " This rule is grounded in the Sixth Amendment which requires that a defendant be physically present at sentencing." United States v. Townsend, 33 F.3d at 1231.  "When a judgment of conviction containing the sentence is officially entered of record, only members of the clerk's office are present." United States v. Townsend, 33 F.3d at 1231.  Other courts have recognized this well-established principle.  See United States v. Mattia, 99 F. App'x 809, 810 (9th Cir. 2004)("The law in this circuit dictates that '[i]n cases where there is a . . . conflict between an unambiguous oral pronouncement of sentence and the written judgment and commitment, . . . the oral pronouncement . . . control[s].  The only sentence that is legally cognizable is the actual oral pronouncement in the presence of the defendant.'"); United States v. Toney, 18 F. App'x 61, 62 (4th Cir. 2001)("[T]he sentences to be served . . . are those pronounced in the defendant's presence in open court and not those set out in the written judgments of the court.")(alteration in original); United States v. Weir, 724 F.2d 94 (8th Cir. 1984)("[T]he oral sentence and not the written order constitutes the actual judgment of the court . . . ."); United States v. Marquez, 506 F.2d 620 (2d Cir. 1974)("It is the oral sentence which constitutes the judgment of the court, and which is authority for the execution of the court's sentence.  The written commitment is 'mere evidence of such authority.'" (citing Pollard v. United States, 352 U.S. at 360 n. 4)(other citations omitted)); Hammons v. United States, No. 801CV1760T30TGW, 800CR097T30TGW, 2005 WL 1712252, at *1 n.2 (M.D. Fla. July 21, 2005)("The sentence in a federal criminal case is the punishment imposed orally by a sentencing judge in a defendant's presence. The written judgment and commitment order is not the sentence. Therefore, where a sentence that is pronounced orally unambiguously conflicts with the written order of judgment, the oral pronouncement

controls." (citations omitted)); United States v. DeVito, 99 F.R.D. 113, 115 (D. Conn. 1983)("[T]he Court of Appeals for the Second Circuit has ruled that the sentence is the district judge's oral pronouncement in court in the presence of the defendant and the judgment and commitment order is 'mere evidence' of that sentence." (citation omitted))).[19]  In accordance with the well-established principle that the oral sentence is the judgment of the Court, and the written judgment is evidence of that sentence, the Court believes that the time that it should calculate in considering the length of delay between J. Gould's conviction and his sentencing for Sixth Amendment purposes is the time from J. Gould's conviction to the oral sentence, and not the time from J. Gould's conviction to the entry of the J&C.

In Perez v. Sullivan, the Tenth Circuit asked "whether [a] fifteen month delay between defendant's plea of guilty and sentencing is sufficiently long to trigger the necessity for further inquiry."  793 F.2d at 254.  The Tenth Circuit stated that, in analyzing the length of delay, it is "impossible to determine with precision when the right has been denied. We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate."  793 F.2d at 255 (quoting Barker v. Wingo, 407 U.S. at 521).  "Nevertheless, we find the delay of some fifteen months from defendant's guilty plea until the time he was sentenced sufficiently long to provoke an inquiry into the other factors identified in Barker."  793 F.2d at 255.  In United States v. Batie, the Tenth Circuit stated that "[d]elays approaching one year generally satisfy the requirement of

_____

[19] Although the rule set forth in these cases is not taken from the context of the Sixth Amendment, the Court believes that this principle of federal criminal law, which is grounded in Sixth Amendment requirements that the defendant be physically present at sentencing, see United States v. Townsend, 33 F.3d at 1231 ("This rule is grounded in the Sixth Amendment which requires that a defendant be physically present at sentencing.  When a judgment of conviction containing the sentence is officially entered of record, only members of the clerk's office are present."), which indicates that, for purposes of the Sixth Amendment, sentencing means the time the district court orally pronounces the defendant's sentence.

presumptive prejudice," 433 F.3d at 1290 (citing <u>Doggett v. United States</u>, 505 U.S. at 652 n.1)(other citations omitted), and held that the delay in the matter before it, which exceeded one year, was presumptively prejudicial, <u>see</u> 433 F.3d at 1290. <u>See</u> <u>United States v. Larson</u>, 627 F.3d 1198, 1209 (10th Cir. 2010)(finding that a delay of thirty-one months was presumptively prejudicial).

The amount of time from J. Gould's conviction on April 2, 2007 to the Court's oral sentence on May 6, 2009 was two years, one month and four days -- or approximately twenty-five months. The Court finds that the delay of twenty-five months between conviction and the Court's oral pronouncement of a sentence is presumptively prejudicial and triggers the <u>Barker v. Wingo</u> balancing test. <u>See</u> <u>United States v. Batie</u>, 433 F.3d at 1290; <u>Perez v. Sullivan</u>, 793 F.2d at 254-55 ("Nevertheless, we find the delay of some fifteen months from defendant's guilty plea until the time he was sentenced sufficiently long to provoke an inquiry into the other factors identified in <u>Barker</u>.").

**B.      J. GOULD'S ACTIONS WERE THE PRIMARY CAUSE OF THE DELAY BETWEEN HIS CONVICTION AND ORAL SENTENCING.**

J. Gould alleges that the delay was not through his fault. He alleges that only twenty-two days of the delay between his conviction and his sentencing can be attributed to the defense. J. Gould asserts that he does not contend that the United States purposefully delayed sentencing, and that his allegations of government delay include the judicial as well as executive branches of government. J. Gould alleges that all parties exercised due diligence during the delay. The United States alleges that J. Gould cannot show that he had no fault in the delay.

"The second factor, the reason for the delay, 'weighs against the government in proportion to the degree to which the government caused the delay.'" <u>United States v. Yehling</u>, 456 F.3d at

-29-

1244 (citation omitted).  "Purposeful delay weighs heavily against the government."  United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 531).  "A more neutral reason such as negligence or overcrowded courts [is] weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  United States v. Yehling, 456 F.3d at 1244 (citation omitted).  "Where the defendant's actions 'were the primary cause of the delay,' the second factor 'weighs heavily against' him."  United States v. Larson, 627 F.3d at 1208 (quoting United States v. Toombs, 574 F.3d at 1274).

J. Gould does not assert intentional delay.  See Supplemental Reply at 5 ("Gould does not claim purposeful delay, . . . .").  The Court will analyze the chronology of the events to determine the reasons for the delay.  J. Gould was convicted on April 2, 2007.  On April 10, 2007, he filed his First Motion for New Trial.  The Court set a motion hearing on J. Gould's First Motion for New Trial for May 24, 2007.  On May 16, 2007, the United States filed the United States' Motion to Continue Hearing on Motion for New Trial, which J. Gould did not oppose.  See Order, filed May 17, 2007 (Doc. 358).  The Court issued an order, granting the United States' motion and continuing the motion hearing.  See Doc. 359.  The Court reset the motion hearing on J. Gould's First Motion for New Trial for July 6, 2007.

J. Gould then filed a Motion to Continue 6 July 2007 Hearing on July 3, 2007, alleging that defense counsel could not appear in person to the hearing.  See Doc. 366.  The Court entered an Order Granting Continuance on July 3, 2007 and rescheduled the hearing for August 9, 2007.  See Doc. 370.  J. Gould filed an Unopposed Motion to Continue 9 August 2007 Hearing on August 8, 2007, stating that counsel was unable to attend the hearing.  See Doc. 376.  The Court entered an Order Granting Continuance on August 8, 2007.  See Doc. 378.  The Court then reset the motion

-30-

hearing for September 7, 2007.  The United States filed a Motion to Continue Motion Setting on September 6, 2007, alleging that its counsel was unavailable for the scheduled hearing because of a medical emergency.  See Doc. 383.  The Court entered an Order Granting Continuance on September 14, 2007.  See Doc. 384.  The Court then reset the motion hearing for October 12, 2007.  The Court held the motion hearing on October 12, 2007.

The Court issued an opinion and order on J. Gould's motion on January 2, 2008, and on January 15, 2008, the Court sent the parties notice that it had set J. Gould's sentencing hearing for March 27, 2008. J. Gould filed an Unopposed Motion to Continue 27 March 2008 Sentence Hearing on January 15, 2008, stating that his counsel would be unable to attend the sentencing hearing on that day.  See Doc. 412.  On January 17, 2008, J. Gould filed an Unopposed Motion to Supplement Motion to Continue 27 March 2008 Sentence Hearing, supplementing his statements that defense counsel would be unavailable and stating that opposing counsel would prefer an earlier setting if possible.  See Doc. 413.  The Court entered an Order Granting Continuance on January 18, 2008, stating that it would reschedule the hearing after receiving suggested dates from counsel.  See Doc. 414.

The Court set J. Gould's sentencing for April 18, 2008.  See Doc. 420.  On April 16, 2008, the United States moved the Court for an order continuing his sentencing.  See Unopposed Motion to Continue Sentencing Hearing, filed April 16, 2008 (Doc. 421).  The United States stated that, on February 26, 2008, it had filed a motion to disclose a mental health evaluation of the victim, Verdin-Rendon; that, upon receipt of the document, J. Gould's counsel indicated his intention to renew his motion for new trial; and that the parties agreed that resolution of this issue should precede J. Gould's sentencing.  On April 18, 2008, the Court entered an order granting the United States' motion and vacating J. Gould's sentencing.  See Doc. 424.  The Court did not re-set the sentencing

-31-

hearing, because it was waiting for J. Gould to file a second motion for new trial.  J. Gould, however, did not file this motion in the next eleven months.  At the hearing on February 23, 2001, J. Gould's counsel represented that the delay in filing J. Gould's Second Motion for New Trial was a result of inadvertence on his part.

During the relevant time period, J. Gould filed three motions to continue.  Although the United States also filed three motions to continue -- which J. Gould did not oppose -- one of the motions requested a continuance to allow defense counsel additional time to file a second motion for new trial, which J. Gould's counsel had indicated he intended to do.  After the Court granted the United States' unopposed motion to continue to allow J. Gould's counsel time to file a second motion for new trial, J. Gould did not file his Second Motion for New Trial for eleven months, until the day of his sentencing, as a result of J. Gould's counsel's inadvertence.  The delay is primarily attributable to J. Gould, because he filed three motions to continue, because one of the motions to continue that the United States filed requested a continuance to allow defense counsel additional time to file a second motion for new trial, and because J. Gould did not file his Second Motion for New Trial for eleven months as a result of his counsel's inadvertence.  See United States v. Larson, 627 F.3d at 1209-10 (finding that the delay was attributable to the defendant, because the delay was attributable to him, because several continuances were granted to give defense counsel additional time to prepared, and several continuances were granted on the defense's motions).  Four of the six motions to continue were granted on J. Gould's motions or were granted to give J. Gould additional time, the Court waited for approximately eleven months for J. Gould to file the motion for new trial, for which it had delayed sentencing, and approximately 481 days of the 764 days of delay are attributable to J. Gould; J. Gould's actions were thus the primary cause of the delay between conviction and the oral sentencing.  See United States v. Toombs, 574 F.3d at 1274-75 (finding that

the reason for delay weighed heavily against the defendant when seven of the nine continuances the district court granted were requested by the defendant, and because "of the 671 days between the filing of Toombs's indictment and the start of his trial, 423 were attributable to motions filed by" the defendant).  Because J. Gould's actions were the primary cause of the delay, the second factor weighs against J. Gould.  United States v. Larson, 627 F.3d at 1208 ("Where the defendant's actions 'were the primary cause of the delay,' the second factor 'weighs heavily against' him." (quoting United States v. Toombs, 574 F.3d at 1274)).

### C.   J. GOULD DID NOT ASSERT HIS SPEEDY TRIAL RIGHT BETWEEN THE CONVICTION AND THE ORAL SENTENCING.

J. Gould argues that he repeatedly made unsuccessful attempts through jail channels to be reclassified into the general population.  J. Gould asserts that he did "everything he could think of, short of filing a civil rights lawsuit against the very institution which has housed him for four years, to address the oppressive conditions of his pre-sentence confinement."  Reply at 7-8.  The United States contends that, as a result, J. Gould did not actively assert his right to speedy trial.

"The third factor assesses whether a defendant asserted his right to adjudication without unreasonable delay."  United States v. Yehling, 456 F.3d at 1244 (citation omitted).  "In Barker, the Supreme Court rejected the contention that a defendant who fails to demand a speedy trial waives the right."  United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 528). "The Court also declined to adopt the antithetical view that a defendant has no duty to assert the right."  United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at  at 528). "Instead, the Court determined a defendant's assertion of, or failure to assert, his right to a speedy trial is merely one factor to be considered in determining whether the right has been violated." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at  at 528).

This factor weighs against J. Gould.  In the time between J. Gould's conviction and the Court's oral pronouncement of J. Gould's sentence, J. Gould filed three motions for continuance and did not oppose the United States' motions for continuance.  One of the United States' motions for continuance requested the Court to continue J. Gould's sentencing hearing, because J. Gould had indicated he wished to file a second motion for new trial.  J. Gould did not file his second motion for new trial until the day of his sentencing hearing, as a result of his counsel's inadvertence.  During the time in which the Court was waiting for J. Gould to file his second motion for new trial, J. Gould's counsel did not contact the Court to inform it when he was going to file the motion, or to tell the Court that he was not going to file the motion and that it could set J. Gould's sentencing hearing; therefore, J. Gould did not assert his speedy trial right.  See United States v. Dirden, 38 F.3d 1131, 1138 (10th Cir. 1994)(finding that the third factor weighed against the defendant when he moved for a continuance and did not assert a speedy trial claim even as two trial settings were vacated).  The Court orally pronounced J. Gould's sentence on May 6, 2009.  It was not until after the delay in the Court's entry of the J&C that J. Gould asserted his speedy trial right.  Although J. Gould's speedy trial right extends to sentencing, the Court sentenced J. Gould on May 6, 2009, and the Court has not found case law that J. Gould's speedy trial right extends to the entry of the J&C.  The Court thus finds that, during the relevant period, J. Gould did not assert his speedy trial right.  See United States v. Batie, 433 F.3d at 1292 ("[The defendant's] persistent requests for continuances, even when opposed, scarcely demonstrate a desire for a speedier process.").  This factor therefore weighs against J. Gould.

### D.   THE DELAY BETWEEN CONVICTION AND ORAL SENTENCING DID NOT SUBSTANTIALLY PREJUDICE J. GOULD.

J. Gould argues that he has made a showing of prejudice.  J. Gould argues that his

incarceration was oppressive.  J. Gould further argues that the time in isolation harmed him psychologically, emotionally, and physically.  J. Gould argues that he has not speculated about an impaired defense, but that the Court should find prejudice because of the oppressive incarceration, and the creation of anxiety and concern.

The United States argues that J. Gould cannot show prejudice to his rights.  The United States argues that the only prejudice that J. Gould alleges is the speculative contention that his conditions of confinement would have been better in federal prison.  The United States further argues that J. Gould has yet to identify a legal issue that would indicate a remote likelihood that any appeal he files would succeed.  The United States contends that society's interest in keeping a violent criminal incarcerated outweighs any harm J. Gould has suffered from the delay in entry of the J&C.

The final factor set forth in Barker v. Wingo analyzes whether the defendant was prejudiced by the delay.  See United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 532).  The Tenth Circuit has recognized that, "[w]hile a showing of prejudice may not be absolutely necessary in order to find a Sixth Amendment violation, we have great reluctance to find a speedy trial deprivation where there is no prejudice."  Perez v. Sullivan, 793 F.2d at 246 (citations omitted).  If there is extreme delay, "the defendant need not present specific evidence of prejudice and instead may rely on the presumption of prejudice created by the extreme delay."  United States v. Toombs, 574 F.3d 1262 (citing Doggett v. United States, 505 U.S. at 655).  If the delay is not sufficiently extreme for the defendant to rest on the presumption of prejudice created by the extreme delay, a defendant must make "a particularized showing of prejudice."  United States v. Toombs, 574 F.3d at 1275.  In determining whether the defendant has made a "particularized showing of prejudice," a court should consider "the three interests the speedy trial right was designed to protect: (1)

prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532). "The most important of these interests is the impairment or hindrance of the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532). "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." Barker v. Wingo, 407 U.S. at 532. "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." United States v. Toombs, 574 F.3d at 1275 (citation omitted). "[O]nce a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant." United States v. Yehling, 456 F.3d at 1245 (citation omitted).

There is not extreme delay from the period of J. Gould's conviction to the Court's oral pronouncement of his sentence.[20]  The Tenth Circuit has held that a twenty-two month delay, the vast majority of which was attributable to the defense, does not constitute extreme delay.  See

---

[20] The Court found that the time from J. Gould's conviction to the Court's oral sentence -- approximately twenty-five months -- was presumptively prejudicial and triggered the Barker v. Wingo balancing test.  See United States v. Batie, 433 F.3d at 1290 ("Delays approaching one year generally satisfy the requirement of presumptive prejudice.").  The Court also finds, however, that this delay did not constitute extreme delay.  The Tenth Circuit has recognized that the Supreme Court, in Doggett v. United States, "concluded extreme delay existed when over eight years, six of which were attributable to the government, had passed between the defendant's indictment and trial." United States v. Toombs, 574 F.3d at 1275 (citing Doggett v. United States, 505 U.S. 647 (1992)). The Tenth Circuit has recognized that a delay which is presumptively prejudicial may not constitute extreme delay.  See United States v. Toombs, 574 F.3d at 1275 ("The twenty-two month delay here, however, the vast majority of which was attributable to the defense, is far shorter than the delay in Doggett and does not constitute extreme delay." (citing United States v. Serna-Villarreal, 352 F.3d 225, 232 (5th Cir.2003)("Indeed, this Court and others generally have found [extreme delay and have thus] presumed prejudice only in cases in which the post-indictment delay lasted at least five years.")).

United States v. Toombs, 574 F.3d at 1275.  It has also recognized that a two-and-one-half year delay is not sufficiently extreme to permit a defendant to rest on a presumption of prejudice. See United States v. Larson, 627 F.3d at 1210.  The Court thus finds that a delay of twenty-five months, a primary part of which is attributable to J. Gould's actions, is not sufficiently extreme to permit J. Gould to rest on a presumption of prejudice.

J. Gould asserts that he suffered prejudice as a result of oppressive post-trial incarceration. As Gould represented at the hearing, he is making a Sixth Amendment speedy trial claim and not another constitutional claim.[21]  J. Gould's incarceration began after his conviction.  Because J. Gould asserts post-conviction prejudice, the prejudice must be substantial and demonstrable.  See United States v. Yehling, 456 F.3d at 1245.  J. Gould asserts that he has been placed in administrative segregation since his incarceration on April 2, 2007 for his personal safety.  J. Gould asserts he has lived in isolation for twenty-three hours a day, with no access to the general population or to any program offered in the general population.  In United States v. Cone, 310 F. App'x 212 (10th Cir. 2008), the Tenth Circuit discussed whether the defendant demonstrated the prejudice factor set forth in Barker v. Wingo.

> First, Cone argues he was prejudiced by being placed in the FTC where he was deprived of a number of services which were previously provided at El Reno.
>
> . . . .
>
> Cone claims prejudice from being placed in a more restrictive facility and we credit his claim.  But that does not necessarily carry the day.  In a related context, the Supreme Court has clearly held no liberty interest is implicated under the Due Process Clause when a prison places a prisoner in a higher security facility.

---

[21] The Court believes that J. Gould in part referenced the Due Process Clause in his pleadings because several cases discussing the factors set forth in Barker v. Wingo discuss whether a defendant's liberty was greatly restricted in their discussion of oppressive incarceration.  See United States v. Yehling, 456 F.3d at 1245.

> Wilkinson v. Austin, 545 U.S. 209, 221 . . . (2005); Sandin v. Conner, 515 U.S. 472, 484 . . . (1995).  Because Cone's liberty interests were significantly diminished due to his conviction for violating the terms of his supervised release, his relocation to the FTC does not present the same liberty concerns as pre-trial incarceration would for a free citizen. Moreover, he was only in the more restrictive facility for eighteen months. Cf. Barker, 407 U.S. at 534 . . . (even for one not yet convicted, ten months of pretrial incarceration resulted in "minimal" prejudice). Thus, we fail to see the substantial prejudice required by Perez.

310 F. App'x at 220 (internal footnotes omitted).  Similarly, J. Gould alleges prejudice from being placed in administrative segregation.  The United States has conceded, for purposes of this motion, that, in administrative segregation, J. Gould was not allowed to work, that he could not have religious services, and that his access to his family and his social interaction with other inmates was restricted.[22]  As the Tenth Circuit recognized in United States v. Cone, because J. Gould's liberty interests were significantly diminished because of his conviction, the administrative segregation does not present the same liberty concerns as pre-trial incarceration of a free citizen presents.  Furthermore, the time from J. Gould's conviction to the date of his sentencing was twenty-five months.  As in United States v. Cone, where the Tenth Circuit did not find substantial prejudice when a defendant was in a more restrictive facility for only eighteen months, J. Gould's placement in administrative segregation for twenty-five months does not demonstrate substantial prejudice.  Moreover, as the Court has found, the delay in J. Gould's sentencing was primarily because of his actions.  Much of the delay in J. Gould's sentencing was a result of the Court waiting for J. Gould to file his Second Motion for New Trial.  J. Gould's placement in administrative segregation was

---

[22] J. Gould advances a number of hardships as a result of the delays in sentencing.  While the Court will, for purposes of these motions, take his statements at face value, the Court is skeptical that J. Gould wanted to leave the local jail and go to a BOP facility.  The Court believes that, whether it was because he wanted to be near family or for some other reason, J. Gould was content to stay at the local facility, not complaining to his lawyer, and not writing to the Court.  The Court receives letters all the time from inmates on a host of topics, but J. Gould never wrote and, until November 9, 2010, his counsel did not contact the Court about the J&C.

not for purposes of punishment; as J. Gould recognizes, he was placed in administrative segregation

for his own safety.  Given these circumstances, the Court finds that J. Gould has not demonstrated

substantial prejudice as a result of his placement in administrative segregation.

J. Gould further asserts that his incarceration is oppressive, because if he had been sentenced

more quickly, he would have been placed in a BOP facility, and in a BOP facility, he would have

been segregated into a separate prison for former police officers and correctional employees, and

could have enjoyed the company of the general population, attended church services and educational

classes, and earned limited employment.  The Tenth Circuit has addressed a similar argument in

Perez v. Sullivan.

> We proceed to evaluate defendant's claims of prejudice, therefore, in the
> context of his status as a convicted felon, not as an accused person awaiting trial.  All
> but one of defendant's numerous claims of prejudice are based on the comparative
> benefits of the New Mexico State Penitentiary at Santa Fe over the Bernalillo County
> jail: potential good-time credits if the defendant's conduct was good or if he engaged
> in various programs or performed exceptionally meritorious service; pay for prison
> labor; inmate release programs; rehabilitative and recreational programs; protection;
> possibly better medical treatment for an alleged hearing problem; and the
> opportunity to earn a less restrictive security level.  He also argues that he suffered
> from anxiety by not knowing what sentence he would serve.  No decision on point
> is cited by defendant in support of his propositions, and we have found none.
> Furthermore, neither the state courts, nor the federal magistrate, nor the district court,
> found any evidence of prejudice to the defendant which rose to the level of a
> constitutional violation.
>
> The benefits arguably available to defendant in the penitentiary are entirely
> speculative not only concerning whether he would have qualified, but also
> concerning the extent to which he would have participated or benefited.  There is no
> record at all with respect to the alleged medical problem.  Speculative allegations of
> injury are unpersuasive.  See United States v. Huffman, 595 F.2d 551, 558 (10th Cir.
> 1979); United States v. Askew, 584 F.2d at 962-63; Smith v. Mabry, 564 F.2d at
> 252-53 (8th Cir. 1977); United States v. Graham, 538 F.2d 261, 265 (9th Cir.), cert.
> denied, 429 U.S. 925 . . . (1976). We decline to attach Sixth Amendment speedy trial
> dimensions to amenities and benefits a convicted felon might receive in one prison
> but not another.
>
> . . . .

Having analyzed defendant's argument within the framework of the factors set forth in Barker, we conclude that the delay in sentencing did not deprive the defendant of his right to a speedy trial.

Perez v. Sullivan, 793 F.2d at 256-57 (internal footnotes omitted).  As the Tenth Circuit found in Perez v. Sullivan, the benefits arguably available to J. Gould in a BOP facility are speculative, and the Court will not attach the speedy trial right to "amenities and benefits a convicted felon might receive in one prison but not another." 793 F.2d at 257.  The Court therefore finds that J. Gould has not demonstrated substantial prejudice based on his assertions regarding the comparative benefits of a BOP facility.

J. Gould also asserts that he has suffered prejudice, because the time that he has spent in isolation caused psychological harm.  In Perez v. Sullivan, the Tenth Circuit addressed a defendant's claim of post-conviction, pre-sentence anxiety, and stated that "[t]here is nothing in the record to support the defendant's contention that he suffered anxiety with respect to the delay in his sentencing or, if so, to what extent[;] [f]urthermore, the anxiety of an accused is not to be equated for constitutional purposes with anxiety suffered by one who is convicted, in jail, unquestionably going to serve a sentence, and only waiting to learn how long that sentence will be." 793 F.2d at 257.  J. Gould was convicted and was unquestionably going to serve a sentence.  As the Court has discussed, the delay in his sentencing was primarily attributable to his actions.  Much of the delay in his sentencing was attributable either to his motions for continuance or to the delay while the Court waited for him to file a second motion for new trial motion.  Based on these circumstances, the Court finds that J. Gould has not demonstrated substantial prejudice based on his allegations of psychological harm.

J. Gould did not set forth an argument regarding prejudice relating to the possibility that the delay hindered the defense.  See Reply to Supplemental Opposition to Motion for Reconsideration

of Sentence at 12 ("Defense counsel has not speculated about an impaired defense at retrial, but the court should find prejudice because of the heavy weight to be assigned to the first two elements [ -- oppressive incarceration and anxiety and concern of the defendant].").  This interest is the most serious of the interests that the Constitution's speedy trial right protects.  See Perez v. Sullivan, 793 F.2d at 256.  Even if J. Gould did set forth an argument regarding this element, however, the Court does not believe that he could demonstrate substantial prejudice.  At the time of the delay, J. Gould's trial had already concluded, and a jury had already convicted J. Gould.  J. Gould had already prepared and presented his defense.  This matter does not present a situation where, as a result of the delay, the defense can no longer access certain evidence or use witnesses.  See United States v. Toombs, 574 F.3d at 1275.  Although the United States makes arguments relating to whether J. Gould has identified an issue that would indicate a remote likelihood that any appeal he files would be successful, the Court has not found any law supporting the proposition that it must consider likelihood of success on appeal for this element.  At the most, J. Gould could allege that he will be successful on appeal, and that his defense at the retrial will be impaired, because the delay will have impaired his ability to access certain evidence or witnesses.  The Court, however, believes that this argument is too speculative to demonstrate the substantial prejudice that J. Gould must show.  See United States v. Yehling, 456 F.3d at 1245.  The Court therefore finds that J. Gould has not demonstrated substantial prejudice based on the possibility that his defense will be impaired.

Because J. Gould failed to make the required showing of substantial prejudice, the fourth factor weighs against him.  See United States v. Larson, 627 F.3d at 1211 ("Furthermore, Mr. Larson's generalized and conclusory references to the anxiety and distress that purportedly are intrinsic to incarceration are not sufficient to demonstrate particularized prejudice . . . . Accordingly, we conclude that Barker's fourth factor weighs against Mr. Larson on account of his

-41-

failure to show prejudice."); <u>United States v. Yehling</u>, 56 F.3d at 1245 ("Because Yehling's alleged prejudice is similarly minimal, he has failed to make the required showing of substantial prejudice. Thus, the fourth factor weighs against Yehling.").

Although the delay was presumptively prejudicial, the second, third, and fourth factors set forth in <u>Barker v. Wingo</u> weigh against J. Gould.  "Absent extraordinary circumstances, <u>Barker</u> counsels not to find a violation of the right to a speedy trial when the defendant's actions indicate he had no desire for a speedy trial."  <u>United States v. Batie</u>, 433 F.3d at 1293.  Furthermore, the absence of prejudice cuts against the Court finding a violation of J. Gould's speedy trial rights.  <u>See</u> <u>United States v. Batie</u>, 433 F.3d at 1293; <u>United States v. Larson</u>, 627 F.3d at 1211 ("Moreover, 'while prejudice is not essential to a violation,' [the Tenth Circuit] is 'reluctan[t] to find a speedy trial deprivation where there is no prejudice.'" (citations omitted)).  Balancing the factors set forth in <u>Barker v. Wingo</u>, the Court finds that J. Gould has not demonstrated that his Sixth Amendment speedy trial rights were violated.  <u>See</u> <u>United States v. Toombs</u>, 574 F.23d at 1276 (finding that the defendant did not make out a Sixth Amendment speedy trial violation when, although the delay was presumptively prejudicial, the second and third factors "in the <u>Barker</u> analysis weigh[ed] heavily against [the defendant], and the fourth d[id] not weigh in his favor").

## III. THE DELAY BETWEEN THE COURT'S ORAL PRONOUNCEMENT OF SENTENCE AND ITS ENTRY OF THE J&C DID NOT DEPRIVE HIM OF A SPEEDY TRIAL OR DUE PROCESS OF LAW.

J. Gould argues that, under the balancing test set forth in <u>Barker v. Wingo</u>, his rights to a speedy trial and due process rights were violated.[23]  The United States argues that the Court should

---

[23] In his Motion to Supplement, J. Gould alleges that his "administrative segregation over a period of years without the timely imposition of his sentence [ -- meaning the Court's entry of the J&C -- ] amounted to a deprivation of his 'liberty' within the meaning of the Due Process Clause." Motion to Supplement at 3.  In <u>Gee v. Pacheco</u>, the Tenth Circuit addressed a prisoner's contention

deny J. Gould's motions.

Although the Tenth Circuit has applied the defendant's speedy trial right from arrest through sentencing, and although due process protects against unreasonable delay in the appellate process, the Tenth Circuit, when faced with a delay after the defendant's sentence was imposed, but before he filed a notice of appeal, has used the factors set forth in Barker v. Wingo to examine whether the delay rose to a level of a constitutional violation.  See United States v. Yehling, 456 F.3d at 1243. In United States v. Yehling, the defendant filed a motion for new trial after he was tried, convicted, and sentenced.  See 456 F.3d at 1239.  The district court did not rule on the defendant's motion for new trial for four years.  See 456 F.3d at 1239.  The Tenth Circuit applied the test set forth in Barker v. Wingo to determine whether the four-year delay deprived the defendant of a speedy trial or due

---

that "incarcerating him for four weeks in an isolation cell with limited outdoor recreation and lack of access to hygiene items" and incarcerating him in segregation, violated his Fourteenth Amendment rights.  627 F.3d at 1192.  The Court summarily rejected the inmate's claims that isolation and segregation violated his procedural due-process right, because an inmate does not "have a liberty interest in his conditions of confinement (including placement in isolation and segregation), unless the facts show that the conditions 'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Gee v. Pacheco, 627 F.3d at 1193-94 (quoting Sandin v. Conner, 515 U.S. 472, 484; citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)).  See Jones v. Walker, 358 F. App'x 708, 712 (7th Cir. 2009)("[Inmates] do not have a liberty interest in avoiding placement in discretionary segregation, meaning segregation 'imposed for administrative, protective, or investigative purposes.'" (quoting Townsend v. Fuchs, 522 F.3d 765, 771-72 (7th Cir. 2008))); Townsend v. Fuchs, 522 F.3d at 771 ("Indeed, there is nothing 'atypical' about discretionary segregation; discretionary segregation is instead an 'ordinary incident of prison life' that inmates should expect to experience during their time in prison" (citations omitted)); Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)(fifteen months in administrative segregation did not implicate a liberty interest); Kuykendall v. Tex. Dep't of Criminal Justice Exec. Dir., 78 F. App'x at 929 ("[An inmate] does not have a liberty interest in his classification as a gang member or in his nonplacement in administrative segregation."  (citing Sandin v. Conner, 515 U.S. at 485; Harper v. Showers, 174 F.3d at 719)).  To the extent J. Gould argues that he has a liberty interest in his placement in administrative segregation, the Court thus finds that he did not have a liberty interest, and thus his due-process rights were not violated.  To the extent that J. Gould asserts a due-process violation because of the delay in the Court's entry of the J&C, the Court will address that claim.

-43-

process of law, and found that it did not.  See United States v. Yehling, 456 F.3d at 1246.  Similarly, the Court will apply the factors set forth in Barker v. Wingo to determine whether the delay between the Court's oral pronouncement of J. Gould's sentence and the entry of the J&C deprived J. Gould of a constitutionally required speedy trial or due process of law.

### A.  THE LENGTH OF DELAY IS PRESUMPTIVELY PREJUDICIAL.

J. Gould was sentenced on May 6, 2009.  The Court entered judgment on January 19, 2011. The delay between J. Gould's sentencing and the Court's entry of the J&C was approximately twenty months.  See Doc. 440.  "The first factor, length of delay, functions as a 'triggering mechanism.'"  United States v. Yehling, 456 F.3d at 1243 (quoting Barker v. Wingo, 407 U.S. at 530).  'The remaining factors are examined only if the delay is long enough to be presumptively prejudicial."  United States v. Yehling, 456 F.3d at 1243 (citing Barker v. Wingo, 407 U.S. at 530). A delay of approximately twenty months is presumptively prejudicial and triggers the Barker v. Wingo balancing test.  See United States v. Batie, 433 F.3d at 1290 (stating that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice," and holding that the delay in the matter before it, which exceeded one year, was presumptively prejudicial)(citations omitted); Perez v. Sullivan, 793 F.2d at 254-55 ("Nevertheless, we find the delay of some fifteen months from defendant's guilty plea until the time he was sentenced sufficiently long to provoke an inquiry into the other factors identified in Barker.").

### B.  THE GOVERNMENT'S ACTIONS WERE THE PRIMARY CAUSE OF THE DELAY.

J. Gould alleges that the delay was not through his fault.  J. Gould alleges that both parties exercised due diligence during the delay.  See Supplemental Reply ("Both parties have exercised due diligence.").  J. Gould contends that he filed his Second Motion for New Trial "on the morning

before the court conducted the sentencing hearing,"[24] Reply at 5 (emphasis in original), and that the motion should not be deemed a contributing cause of the delay in entry of the J&C.

The United States alleges that J. Gould cannot show that he had no fault in the delay.  The United States alleges that J. Gould "procured the delay by filing [the Second Motion for New Trial] and by making no effort to seek a ruling on that motion."  Opposition at 3.

"The second factor, the reason for the delay, 'weighs against the government in proportion to the degree to which the government caused the delay.'"  United States v. Yehling, 456 F.3d at 1244 (citation omitted).  "Purposeful delay weighs heavily against the government."  United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 531).  "A more neutral reason such as negligence or overcrowded courts [is] weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  United States v. Yehling, 456 F.3d at 1244 (citation omitted).  "Where the defendant's actions 'were the primary cause of the delay,' the second factor 'weighs heavily against' him."  United States v. Larson, 627 F.3d at 1208 (quoting United States v. Toombs, 574 F.3d at 1274).

J. Gould does not assert intentional delay.  See Supplemental Reply at 5 ("Gould does not claim purposeful delay . . . .").  The Court thus will analyze the chronology of the events to determine the reasons for the delay.  On May 6, 2009, the day of J. Gould's sentencing, J. Gould's counsel filed J. Gould's Sealed Motion to Supplement Motion for New Trial.  See Doc. 433

---

[24] Although the phrasing of this sentence implies that J. Gould filed his motion in the morning on the day before his sentencing hearing, J. Gould filed his motion at 10:34 a.m. on May 6, 2009 -- approximately three hours before his sentencing hearing at 1:30 p.m.

("Second Motion for New Trial").[25]   At the sentencing hearing, the Court asked J. Gould's counsel whether it should rule on his Second Motion for New Trial before it pronounced a sentence or whether it should wait until after sentencing to rule on the Second Motion for New Trial.  See May 6, 2009 Tr. at 71:7-12.  J. Gould's counsel stated that he would not object to the Court ruling on the motion after the sentencing and that he did not "see any harm to the defendant" in the Court ruling on the motion after sentencing him.  May 6, 2009 Tr. at 73:23-24 (Aarons).  The United States stated that it did not believe that there was anything procedurally improper about the Court passing a sentence and then addressing the motion for a new trial post-sentence.  See May 6, 2009 Tr. at 74:3-7 (Parker).  The Court sustained some of J. Gould's objections to the PSR and varied from the guideline sentencing range, sentencing J. Gould to 97 months as to Counts 1, 2, 3 and 4, said terms to run concurrently.  See Sentencing Clerk's Minutes, dated May 6, 2009 (Doc. 439).[26]

The Court worked on the opinion explaining its sentence and variance over the summer, finishing the opinion in August, 2009.  In late August 2009, the lawclerk assigned to this matter alerted the CRD that an opinion on the sentencing issues that J. Gould raised in his sentencing memorandum was ready for filing, but that the variance language for the J&C still needed to be

---

[25] At the hearing on February 23, 2011, J. Gould's counsel represented that the delay in filing J. Gould's Second Motion for New Trial was a result of inadvertence on his part.  See Transcript of Hearing at 3:19-25 (taken February 23, 2011)(Court, Aarons)("Feb. 23, 2011 Tr.")(the Court's citations to the transcripts refer to the court reporter's original, unedited version; the final transcripts may contain slightly different page and/or line numbers).

[26] Although the Court orally imposed J. Gould's sentence, the BOP does not designate prisoners after the Court's oral sentence.  Instead, the BOP waits until receiving the J&C to designate prisoners.  There are some exceptions, for example, when a prisoner gets a sentence of time served, and the BOP has the oral sentencing form with the Court's signature, the BOP will release a prisoner.

prepared.[27]

Routinely, the Court's CRD maintains working files for all criminal cases.  For those criminal cases in which sentencing is pending, she maintains folders in a particular drawer in her office.  The file for this matter is voluminous, and, as a result, the CRD pulled the file from her drawer where the other working files are maintained and placed it on a credenza in her office.  The CRD maintains an internal list of all matters in which a J&C is pending because the Court intends to issue an opinion on a sentencing, or because of departure and/or variance issues.  The CRD routinely circulates this internal list to the Court and lawclerks.

At the time the law clerk alerted her that the sentencing memorandum opinion and order was ready for filing, the CRD apparently removed this case from the pending J&C list.  The CRD did not enter the sentencing memorandum opinion and order at that time.  Because it had completed the memorandum opinion and order and gave it to the CRD, the Court assumed that the CRD had entered the memorandum opinion and order, and the J&C.

The CRD does not recall defense counsel contacting her at any point regarding the status of the Court's decision on J. Gould's Second Motion for New Trial or regarding the status of the J&C. J. Gould -- either through counsel or otherwise -- did not contacted the Court regarding the status of his case until November, 2010.  J. Gould asserts that he instead repeatedly made unsuccessful attempts through jail channels to be reclassified into the general population, but, of course, the Court was not aware of these efforts.  The CRD recalls counsel for the United States inquiring about the status of the case on a few occasions.  In  November 9, 2010, the Court received a CJA letter from

---

[27] The Sentencing Guidelines Commission encourages district judges to put their reasons in the J&C so, for statistical and study purposes, it can determine what is happening with sentencing across the country.

J. Gould's counsel, indicating that the matter was still an open file.  In his letter, J. Gould's counsel stated:

> Please accept the enclosed CJA voucher for work done to present.  I had hoped to hold off until a final bill, but so much time has elapsed with the case open and several CJA lawyers including myself have been striving to get all old CJA invoices into the system by tomorrow.

Letter from Stephen D. Aarons to the Honorable James O. Browning at 1 (dated October 6, 2010).[28] This point was the first point when the Court had some knowledge that the J&C had not been filed. The Court made inquiry of the CRD in mid-November, 2010.

In mid to late December, 2010, the CRD reported to the Court that her review had found that the Court's sentencing memorandum opinion and order and the J&C had not been entered.  The Court instructed her to file the sentencing memorandum opinion and order, without any changes, and prepare and file the J&C.  On December 30, 2010, the Court's Memorandum Opinion and Order, granting in part and denying in part the relief J. Gould sought in his sentencing memorandum, and granting a variance from the guideline sentencing range, was entered.  See Doc. 437.  On January 19, 2011, the Judgment as to J. Gould was entered.  See Doc. 440.

The delay between J. Gould's sentencing and the entry of the J&C is attributable to the government, because it was a result of the Court's clerical error in not entering the sentencing memorandum opinion and order or the J&C.  See United States v. Yehling, 456 F.3d at 1244 (stating that the delay in the case was the result of negligence when the district court did not decide the defendant's motion for new trial for almost four years).  Although this factor weighs in J. Gould's favor, it does not weigh heavily.  See United States v. Yehling, 456 F.3d at 1244 ("A more neutral

---

[28] Although this letter is dated October 6, 2010, the letter did not arrive in the Court's chambers until November 9, 2010.

reason such as negligence or overcrowded courts [is] weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." (citing Barker v. Wingo, 407 U.S. at 531)).

    **C.**    **J. GOULD DID NOT ASSERT HIS SPEEDY TRIAL RIGHT OR DUE PROCESS RIGHTS AFTER ORAL SENTENCING AND BEFORE NOVEMBER, 2010.**

J. Gould argues that he repeatedly made unsuccessful attempts through jail channels to be reclassified into the general population. J. Gould asserts that he did "everything he could think of, short of filing a civil rights lawsuit against the very institution which has housed him for four years, to address the oppressive conditions of his pre-sentence confinement." Reply at 7-8. J. Gould asserts that counsel for both parties asserted their right to adjudication by contacting the Court's CRD from time to time to request a ruling.[29] See Supplemental Reply at 6.

The United States argues that J. Gould did nothing before November 2010 to seek relief from the conditions of his imprisonment and did nothing to request that the Court rule on his pending motion for new trial. The United States contends that, as a result, J. Gould did not actively assert his right to speedy trial.

"The third factor assesses whether a defendant asserted his right to adjudication without unreasonable delay." United States v. Yehling, 456 F.3d at 1244 (citation omitted). "In Barker, the Supreme Court rejected the contention that a defendant who fails to demand [adjudication without unreasonable delay] waives the right." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 528). "The Court also declined to adopt the antithetical view that a defendant

---

    [29] At the hearing, J. Gould's counsel represented that he did not have a specific recollection of calling the CRD regarding the Second Motion for New Trial, and that he could not represent that he had called the CRD to ask about the status of the J&C. See Tr. at 11:5-23 (Court, Aarons).

has no duty to assert the right." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 528). "Instead, the Court determined a defendant's assertion of, or failure to assert, his right to [adjudication without unreasonable delay] is . . . one factor to be considered in determining whether the right has been violated." United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 528).

This factor weighs against J. Gould.   During the time following the Court's oral pronouncement of J. Gould's sentence, the CRD does not recall either J. Gould or his counsel contacting the Court as to the status of the Court's decision on J. Gould's Second Motion for New Trial or on the entry of the J&C.   At the hearing, J Gould's counsel could not represent that he had a specific recollection of calling the Court to ask about the status of its ruling on his Second Motion for New Trial or about the status of the J&C.   See Tr. at 11:11-23 (Court, Aarons).   J. Gould filed his Motion in November 2010, after the delay had already occurred, quickly followed by a Supplemental Motion and Second Motion.   As J. Gould's counsel stated at the hearing: "And so I understand that there's some concern that the defendant didn't [assert] his right as much as he should have, and I think that's a fair finding by the Court, . . . ."   Tr. at 18:13-18 (Aarons).   Even if J. Gould's speedy trial right extends to the entry of the J&C, therefore, this factor weighs against him. As the Tenth Circuit stated in United States v. Batie:

> Perhaps most important is whether the defendant has actively asserted his right to a speedy trial. This is not satisfied merely by moving to dismiss after the delay has already occurred. Such a motion could be, indeed may well be, strategic.   The question, instead, is whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch.

433 F.3d at 1291.

**D.   THE DELAY BETWEEN SENTENCING AND ENTRY OF THE J&C DID NOT SUBSTANTIALLY PREJUDICE J. GOULD.**

J. Gould argues that he has made a showing of prejudice, arguing that his incarceration was oppressive and that the time in isolation harmed him psychologically, emotionally, and physically. J. Gould argues that he has not speculated about an impaired defense, but that the Court should find prejudice because of the oppressive incarceration, and the creation of anxiety and concern.

The United States argues that J. Gould cannot show prejudice to his rights. The United States argues that the only prejudice that J. Gould alleges is the speculative contention that his conditions of confinement would have been better in federal prison. The United States further argues that J. Gould has yet to identify a legal issue that would indicate a remote likelihood that any appeal he files would succeed. The United States contends that society's interest in keeping a violent criminal incarcerated outweighs any harm J. Gould has suffered from the delay in entry of the J&C.

The final factor set forth in Barker v. Wingo analyzes whether the defendant was prejudiced by the delay. See United States v. Yehling, 456 F.3d at 1244 (citing Barker v. Wingo, 407 U.S. at 532). The Tenth Circuit has recognized that, "[w]hile a showing of prejudice may not be absolutely necessary in order to find a [constitutional] violation, we have great reluctance to find a speedy trial deprivation where there is no prejudice." Perez v. Sullivan, 793 F.2d at 246 (citations omitted). If there is extreme delay, "the defendant need not present specific evidence of prejudice and instead may rely on the presumption of prejudice created by the extreme delay." United States v. Toombs, 574 F.3d 1262 (citing Doggett v. United States, 505 U.S. at 655). If the delay is not sufficiently extreme for the defendant to rest on the presumption of prejudice created by the extreme delay, a defendant must make "a particularized showing of prejudice." United States v. Toombs, 574 F.3d

-51-

at 1275.  In determining whether the defendant has made a "particularized showing of prejudice," a court should consider "the three interests the speedy trial right was designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532).  "The most important of these interests is the impairment or hindrance of the defense." United States v. Toombs, 574 F.3d at 1275 (citing Barker v. Wingo, 407 U.S. at 532).  "If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past." Barker v. Wingo, 407 U.S. at 532.  "The individual claiming the Sixth Amendment violation has the burden of showing prejudice." United States v. Toombs, 574 F.3d at 1275 (citation omitted).  "[O]nce a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant." United States v. Yehling, 456 F.3d at 1245 (citation omitted).

There is not extreme delay in this matter from the period from J. Gould's sentencing to the entry of the J&C.  The Tenth Circuit has held that a twenty-two month delay does not constitute extreme delay. See United States v. Toombs, 574 F.3d at 1275.  It has also recognized that a two-and-one-half year delay is not sufficiently extreme to permit a defendant to rest on a presumption of prejudice. See United States v. Larson, 627 F.3d at 1210.  The Court thus finds that a delay of approximately twenty months is not sufficiently extreme to permit J. Gould to rest on a presumption of prejudice.

J. Gould asserts that he suffered prejudice as a result of oppressive post-trial incarceration. J. Gould's incarceration began after his conviction.  Because J. Gould asserts post-conviction prejudice, the prejudice must be substantial and demonstrable. See United States v. Yehling, 456

F.3d at 1245.   J. Gould asserts that he has been placed in administrative segregation since his incarceration on April 2, 2007 for his personal safety.   J. Gould asserts he has lived in isolation for twenty-three hours a day, with no access to the general population or any program offered in the general population.   As in United States v. Cone, where the defendant alleged prejudice as a result of his placement in a more restrictive facility, see 310 F. App'x at 220,  J.  Gould alleges prejudice from being placed in administrative segregation.   The United States has conceded, for purposes of this motion, that, in administrative segregation, J. Gould was not allowed to work, that he could not have religious services, and that his access to his family and his social interaction with other inmates was restricted.   As the Tenth Circuit recognized in United States v. Cone, however, because J. Gould's liberty interests were significantly diminished because of his conviction, see 310 F. App'x at 220, the administrative segregation does not present the same liberty concerns as pre-trial incarceration of a free citizen presents.   Furthermore, the time from the Court's oral pronouncement of J. Gould's sentence to the entry of the J&C was approximately twenty months.   As in United States v. Cone, where the Tenth Circuit did not find substantial prejudice when a defendant was in a more restrictive facility for only eighteen months, see 310 F. App'x at 220, J. Gould's placement in administrative segregation for twenty-five months does not demonstrate substantial prejudice. Moreover, as the Court has found, the delay in J. Gould's sentencing was primarily because of his actions.   Much of the delay in J. Gould's sentencing was a result of the Court waiting for J. Gould to file his Second Motion for New Trial.   J. Gould's placement in administrative segregation was not for purposes of punishment; as J. Gould recognizes, he was placed in administrative segregation for his own safety.   Given these circumstances, the Court finds that J. Gould has not demonstrated substantial prejudice as a result of his placement in administrative segregation.

J. Gould further asserts that his incarceration is oppressive, because if he had been sentenced

more quickly he would have been placed in a BOP facility, and in a BOP facility, he would have

been segregated into a separate prison for former police officers and correctional employees, and

could have enjoyed the company of the general population, attended church services and educational

classes, and earned limited employment.  The Tenth Circuit has addressed a similar argument in

Perez v. Sullivan.

> We proceed to evaluate defendant's claims of prejudice, therefore, in the
> context of his status as a convicted felon, not as an accused person awaiting trial.  All
> but one of defendant's numerous claims of prejudice are based on the comparative
> benefits of the New Mexico State Penitentiary at Santa Fe over the Bernalillo County
> jail: . . . .
>
> The benefits arguably available to defendant in the penitentiary are entirely
> speculative not only concerning whether he would have qualified, but also
> concerning the extent to which he would have participated or benefited. . . .  We
> decline to attach Sixth Amendment speedy trial dimensions to amenities and benefits
> a convicted felon might receive in one prison but not another.

Perez v. Sullivan, 793 F.2d at 256-57 (internal footnotes omitted).  As the Tenth Circuit found in

Perez v. Sullivan, the benefits arguably available to J. Gould in a BOP facility are speculative, and

the Court will not attach the speedy trial right to "amenities and benefits a convicted felon might

receive in one prison but not another." 793 F.2d at 257.  The Court therefore finds that J. Gould has

not demonstrated substantial prejudice based on his assertions regarding the comparative benefits

of a BOP facility.

J. Gould also asserts that he has suffered prejudice, because the time that he has spent in

isolation caused psychological harm.  In Perez v. Sullivan, the Tenth Circuit addressed a defendant's

claim of post-conviction, pre-sentence anxiety, and stated:

> There is nothing in the record to support the defendant's contention that he suffered
> anxiety with respect to the delay in his sentencing or, if so, to what extent[;]
> [f]urthermore, the anxiety of an accused is not to be equated for constitutional
> purposes with anxiety suffered by one who is convicted, in jail, unquestionably going
> to serve a sentence, and only waiting to learn how long that sentence will be.

-54-

793 F.2d at 257.  J. Gould was convicted and was unquestionably going to serve a sentence of incarceration.  As the Court has discussed, the delay in his sentencing was primarily attributable to his actions.  Much of the delay in his sentencing was attributable either to his motions for continuance or to the delay while the Court waited for his to file a second motion for new trial motion.  Based on these circumstances, the Court finds that J. Gould has not demonstrated substantial prejudice based on his allegations of psychological harm.

J. Gould did not set forth an argument regarding prejudice relating to the possibility that the delay hindered the defense.  See Reply to Supplemental Opposition to Motion for Reconsideration of Sentence at 12 ("Defense counsel has not speculated about an impaired defense at retrial, but the court should find prejudice because of the heavy weight to be assigned to the first two elements [ -- oppressive incarceration and anxiety and concern of the defendant].").  This interest is the most serious of the interests that the speedy trial right protects.  See Perez v. Sullivan, 793 F.2d at 256. Even if J. Gould set forth an argument regarding this element, however, the Court does not believe that J. Gould could have demonstrated substantial prejudice.  At the time of the delay, J. Gould's trial had already concluded, and a jury had already convicted him.  J. Gould had already prepared and presented his defense.  This matter does not present a situation where, as a result of the delay, the defense can no longer access certain evidence or use witnesses.  See United States v. Toombs, 574 F.3d at 1275.  Although the United States makes arguments relating to whether J. Gould has identified an issue that would indicate a remote likelihood that any appeal he files would be successful, the Court has not found any law supporting the proposition that it must consider likelihood of success on appeal for this element.  At the most, J. Gould could allege that he will be successful on appeal, and that his defense at the retrial will be impaired, because the delay will have impaired his ability to access certain evidence or witnesses.  The Court, however, believes that this

argument is too speculative to demonstrate the substantial prejudice that J. Gould must show.  See

United States v. Yehling, 456 F.3d at 1245.  The Court therefore finds that J. Gould has not

demonstrated substantial prejudice based on the possibility that his defense will be impaired.

Because J. Gould failed to make the required showing of substantial prejudice, the fourth

factor weighs against him.  As the Tenth Circuit stated in United States v. Larson:

> Furthermore, Mr. Larson's generalized and conclusory references to the anxiety and
> distress that purportedly are intrinsic to incarceration are not sufficient to
> demonstrate particularized prejudice, and Mr. Larson has not cited any authority to
> the contrary. Accordingly, we conclude that Barker's fourth factor weighs against
> Mr. Larson on account of his failure to show prejudice.

627 F.3d at 1211.  See United States v. Yehling, 56 F.3d at 1245 ("Because Yehling's alleged

prejudice is similarly minimal, he has failed to make the required showing of substantial prejudice.

Thus, the fourth factor weighs against Yehling.").

Although the first two Barker v. Wingo factors -- the length of delay and the reason for the

delay -- weigh in favor of finding a constitutional violation in this case, the last two factors do not.

J. Gould did not timely assert his right to the entry of the J&C or a decision on his Second Motion

for New Trial without unreasonable delay, and J. Gould has failed to allege particularized and

substantial prejudice resulting from the delay.  None of the Barker v. Wingo factors are dispositive,

but the Supreme Court has stated that a defendant's assertion of his right carries strong weight in

determining whether his rights were violated, because the more serious the deprivation of his rights,

the more a defendant is likely to complain.  See Barker v. Wingo, 407 U.S. at 531.  Furthermore,

the Tenth Circuit has "indicated the necessity of showing substantial prejudice dominates the Barker

balancing test once the defendant has been convicted."  United States v. Yehling, 456 F.3d at 1245-

46 (citation omitted).  Because the first and second factors that the Supreme Court set forth in Barker

v. Wingo "do not compensate for [J. Gould's] failure to timely assert his right or allege substantial

prejudice, [J. Gould] has failed to establish the delay deprived him of a speedy trial or due process of law." United States v. Yehling, 456 F.3d at 1246.

**IT IS ORDERED** that: (i) the Motion for Reconsideration of Sentence, filed November 18, 2010 (Doc. 435) is denied; (ii) the Motion to Supplement Motion for Reconsideration of Sentence, filed December 10, 2010 (Doc. 436) is denied; and (iii) the Second Motion for Reconsideration of Sentence, filed January 13, 2011 (Doc. 438) is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
    United States Attorney
Paul Spiers
    Assistant United States Attorney
Albuquerque, New Mexico

-- and --

Mark Blumberg
Kristy Parker
    Trial Attorneys
United States Department of Justice
Civil Rights Division, Criminal Section
Washington, D.C.

        *Attorneys for the Plaintiff*

Stephen Aarons
Santa Fe, New Mexico

        *Attorney for the Defendant*

-57-